## BRUCE v. BRUCE.

No. 20507. Opinion Filed Jan. 21, 1930.

Charles A. Chandler, Eliot D. Turnage, and W. H. Twine, for plaintiff in error.

J. Bernard Smith, for defendant in error.

CULLISON, J. This case comes to this court on appeal from a judgment of the district court of Muskoge county, Okla., granting the plaintiff in error, J. J. Bruce, an absolute divorce, from defendant in error, Ida B. Bruce, and awarding the custody of the minor children of said parties to said J. J. Bruce, and adjudicating the property rights of the respective parties.

The parties herein will be referred to as in the trial court; J. J. Bruce, plaintiff, and Ida B. Bruce, defendant.

The record shows that there were born to plaintiff and defendant three living children, as follows: Robert Bruce, 18 years of age; Edward J. Bruce, 16 years of age; and James L. Bruce, 14 years of age.

Plaintiff in his petition alleges his wife, the defendant herein, is a common gossip, a disturber of the peace of the neighborhood in which she lives; neglects her household duties; untidy housekeeper; will not cook his meals; that she quarrels at, nags, and harasses him; that her conduct is detrimental to his business and his health; and that it is impossible for him and his wife to live together.

Plaintiff further alleges that his wife is cruel to him; that she accuses him of having improper relations with other women; that she has jeopardized his life.

Plaintiff in his own behalf says he has been patient, meek, and kindly disposed toward his wife; all of which defendant denies.

Wishing to preserve the dignity of this honorable court, we limit comment.

The petition, prima facie, states sufficient facts, if true, to warrant the court granting a divorce.

Defendant says that plaintiff's evidence is insufficient, and does not support the judgment of the trial court granting plaintiff a divorce.

The testimony is conflicting, much of it incompetent, nearly all of it repeated from two to five times, composing nearly 100 pages of typewritten matter, all of which we have read and reread.

After a very careful study of the entire record in the case, we are unwilling to say that plaintiff has failed to establish or prove the allegations of his petition.

In the case of Stovall v. Stovall, 29 Okla. 125, 116 Pac. 791, this court held:

"Where, in an action for divorce on the ground of cruelty, the evidence is conflicting as to the facts and the fault, but there is sufficient evidence to sustain the decree of the trial court, the same will not be disturbed on appeal."

We are not unmindful that the trial judge was, or should have been, conversant with all the facts and circumstances developed and surrounding the divorce proceedings; he had the witnesses before him and was in a much better position to pass on their

credibility than is this court. For these reasons, we cannot say or hold that the trial court erred in granting plaintiff a divorce. In view of our law which permits the court to grant a divorce to either of the parties to the action, the judgment of the court granting plaintiff a divorce from the defendant will be sustained.

### Property Settlement.

The record shows that on February 23, 1929, the court rendered judgment granting plaintiff a divorce and on February 28, the court rendered a supplemental judgment adjudicating the property rights and decreed the care and custody of the children to the plaintiff.

The court in his findings of fact enumerates and describes all of the property of plaintiff and defendant, consisting of many pieces of town and farm property, and concludes his findings of facts with the following statement:

"And that said property was acquired by the industry and out of the earnings of the plaintiff as an attorney at law."

With the above statement we cannot agree; neither is it borne out by the evidence.

Time and space will not permit this court to discuss in detail the property rights of these litigants. We think the evidence of plaintiff and defendant and of the witnesses sworn to testify clearly shows that all the property owned by plaintiff and defendant, except two pieces which we will notice hereafter, is the joint accumulation of both parties since their marriage. The evidence does show that at the time of the marriage the plaintiff had no business or property of any kind. The evidence does show that the defendant was reared, educated, and married in the state of Georgia: that her people are wealthy and highly respected. The evidence further shows that when plaintiff and defendant were married, defendant's father bought all the furniture and household goods with which these parties began housekeeping; and the home was well furnished. The evidence shows that plaintiff had title to or interest in a one-half acre tract of land in Georgia of but little or no value; that he borrowed $200 from his mother-in-law and deeded her the land as security for the loan. Plaintiff in his testimony (C.-M. 219) said he sold the land, the one-half acre, for $60 and that the $200 was never paid. The evidence further shows that at the time of defendant's marriage she was teaching school; that she continued to teach for some time after marriage; that she turned all of her wages over to the plaintiff at the close of each month. The record clearly shows that at the time of the marriage, plaintiff had no property or business; that the money or property received from defendant's people and what she earned by teaching school enabled them to come to Oklahoma. The record shows that soon after plaintiff and defendant moved to Oklahoma, defendant's people purchased and deeded to the defendant a piece of property in Muskogee, Okla., which property is known and referred to as the "24th St. property" and described by the court as: "South ½ of lots 1 and 2 and all of lots 4, 5 and 6 in block 1, Love's addition to the city of Muskogee, Okla.". Defendant testifies that the 24th street property was deeded to her by her people to enable her to get a home, and in time a five-room house was built on said property. The court awarded said property to the defendant as part of the joint accumulations since marriage. The evidence nowhere tends to support such a conclusion.

It is our opinion, from a careful reading of the entire record in this case, the 24th street property set off to the defendant by the court is not a part of plaintiff's and defendant's joint accumulation since marriage nor is it property earned by the plaintiff. Upon the other hand, the record is clear and convincing that said property was purchased and deeded to defendant by her people. It is the opinion of this court, and we so hold, that said 24th street property is not a part of the joint accumulations of plaintiff and defendant since marriage, but is the separate and individual property of defendant. Plaintiff could have no right in or to said property except through his matrimonial relations with his wife, and when he divorced her he thereby forfeited all his interest in her separate property.

Section 6607, C. O. S. 1921, provides:

"The husband must support himself and his wife out of his property or by his labor. The wife must support the husband, when he has not deserted her, out of her separate property, when he has no separate property and he is unable from infirmity to support himself."

Section 6608, C. O. S. 1921, provides:

"Except as mentioned in the preceding section, neither husband nor wife has any interest in the separate property of the other, but neither can be excluded from the other's dwelling."

This court in construing the foregoing sections of our statutes, in Moody v. Moody, 120 Okla. 128, 250 Pac. 916, says in the syllabus:

"In a divorce action, where decree is de-

mony is involved, the court has authority nied to both parties and no question of alito to make an equitable division of the property of the parties by virtue of the provisions of Comp. Stat. 1921, sec. 505, but this authority of equitable division of the property of the parties does not authorize the court to decree to the husband an interest in the separate property of the wife, owned by her prior to the marriage, nor to decree to the husband an interest in the income and profits from such separate property of the wife, the husband being an able-bodied man and suffering from no infirmity Comp. Stat. 1921, secs. 6607-6608."

In the above case it is insisted on behalf of the husband, plaintiff therein, that the clause in the above section reading, "and for the control and equitable division and disposition of the property of the parties, or either of them," means that the husband in this case may be decreed an interest in the separate property of the wife which she owned prior to her marriage, and includes a right to him to share in the profits accruing to her from this separate property.

The court, in answering that contention, said:

"Such a construction of the above language would be in conflict with sections 6607 and 6608, supra, and it is not considered that such conflict was intended by the Legislature. Section 505, supra, has been before this court in previous cases and has received a construction which is not in consonance with the theory of the husband in the instant case."

In the case at bar no question of alimony is involved; neither is there any testimony or claim tending to show the plaintiff is suffering from some infirmity and unable to support himself.

We are not unmindful of the well-established rule that this court will not reverse the trial court in an equity case unless the judgment is clearly against the weight of the evidence. But this rule has reference only to unmixed questions of fact and has no application where the law has been misapplied to the facts.

A divorce obtained by a man for the fault of his wife will relinquish his right to any interest in her separate property; subject to the qualification imposed by the last subdivision of section 508, C. O. S. 1921, providing that "the court may set apart to the husband and for the support of the children, issue of the marriage, such portion of the wife's separate estate as may be proper."

In the case of Geo. M. Doyle v. E. G. Rolwing (Mo.) reported in 55 L. R. A. 332, the court held:

"A divorce obtained by a man for the fault of his wife will defeat his right of curtesy in her property."

It was argued in the brief of respondent in Doyle v. Rolwing, supra, as follows:

"A husband becomes tenant by curtesy initiate upon the birth of living issue, but can only become tenant by the curtesy consummate by the death of his wife. But if she who was his wife ceased to be such before his death, there is no death of the wife, and hence no curtesy. 2 Bishop, Marr. & Div. (Ed. 1891) sec. 1644. * * *

"A wife is not entitled to dower in her deceased husband's estate, where the bonds of matrimony were dissolved prior to his death. Gould v. Crow, 57 Mo. 204, 2 Bishop, Marr. & Div. (Ed. 1891) secs. 1632, 1633," and many other authorities too numerous to mention.

In Doyle v. Rolwing, supra, the court said:

"This is an action in ejectment. Plaintiff claims an undivided one-twelfth in fee, and a life estate as tenant by the curtesy in the rest. His fee in the one-twelfth is conceded, but his claim of estate by the curtesy is disputed. The facts are these: In 1874 and 1878 plaintiff bought the lands in question, and paid for them with his own means, but took the deeds in his wife's name as grantee. The titles were fee simple. There were three children born of the marriage, capable of inheriting. In February, 1881, he obtained a decree of divorce for the fault of his wife. After the divorce the wife, or she who had been the wife, conveyed the land by deed to the three children of the marriage. Defendant holds title under them. She died in 1890, leaving the plaintiff surviving. Plaintiff inherited a one-twelfth interest from one of his deceased children. The defendant holds the fee to eleven-twelfths. The judgment of the circuit court was for the plaintiff for one-twelfth, and the rents and profits appertaining thereto, and for the defendant for the rest. The plaintiff appeals."

The question in that case as stated by the court is:

"The question of law which the case presents for decision is this: When a tenant by the curtesy initiate obtains a divorce for the fault of his wife, does his estate continue, so that if she dies, leaving him surviving, the curtesy becomes consummate?"

The court in its opinion cites the rule of law found in the 9th Amer. & Eng. Enc. of Law (2d Ed.) pg. 858, which reads as follows:

"When a marriage is dissolved, the husband ceases to have any interest in the wife's lands by the estate of curtesy, as this

estate depends upon coverture and the death of the wife, and does not arise upon the death of a divorced wife."

And in support of that rule the authorities above quoted cite many other authorities which are too numerous to mention. And the majority of the courts referred to in the above list sustain the principle stated in the text. And to the same effect and based on the same reason, is another high authority on this subject. 2 Bishop, Marr. & Div., sec. 1644.

The court further held:

"A divorce under the statute for a cause arising after the marriage puts an end to the marital relation, but it does not relate back to the act of marriage and render it null."

To apply the ancient definition to altered conditions would be equivalent to giving it a force its authors never contemplated. In 2 Bishop, Marr. & Div., sec. 705, it is said:

"This divorce puts an end to all rights depending upon the marriage, and not actually vested, as dower in the wife, curtesy in the husband, and his right to reduce to possession her choses in action."

The court in rendering the opinion quotes another authority which reads as follows:

"But the divorce which breaks the bands of matrimony perpetually dissolves the marital relation between them, so that the man ceases forever to be the husband and the woman to be the wife, must necessarily defeat its consummation."

The appellant in Doyle v. Rolwing, supra, contends that the husband had a vested freehold estate in his own right in the lands in suit. The court said:

"The only answer to that proposition is that the obtaining of the divorce was his own free act and deed, and, if it has the effect to destroy his estate, it is not by forfeiture, but by relinquishment. * * *

"Divorce is a misfortune under any circumstances. It is permitted by law to an innocent party who chooses it rather than continue the greater misfortune. It is a choice between two calamitous conditions. The law does not hope to compensate the innocent party for the family relation destroyed by the conduct of the guilty one. The divorce is granted as affording some relief, but at best it entails suffering and sacrifice on the innocent. If, in view of all the consequences, the innocent party elects to obtain a divorce, he must be considered as voluntarily relinquishing rights inconsistent with the new condition, whether they be social or property rights."

The court also shows the fallacy of appellant's contention and says:

"Suppose the divorced wife, still owning the land in fee, marry another man, and have children capable of inheriting by her second marriage, would her second husband become tenant by the curtesy initiate? And if she should die, leaving her former husband and her second husband both surviving her, which of the two would be entitled to the estate for his life by the curtesy? Their respective claims would be totally irreconcilable. When she marries the second time, her second husband takes her and what is hers as completely as if she had never been married before. It would be as inconsistent in the former husband to claim a lingering interest in her property as it would be to claim a right to her society.

"The only way to adjust the rights of the parties to the conditions and consequences produced by the divorce is to hold that the party obtaining the divorce, however innocent, by accepting the condition, and in consideration of the amelioration it was hoped would be afforded by it, voluntarily surrendered whatever rights he or she had, whether vested or contingent, that arose out of the marriage and the marital relation, the exercise of which would be in conflict with the inevitable consequences of the severed relation. And this must be presumed to have been the intention of the Legislature, since it is a natural result of the statute.

"Under this view of the law, a wife obtaining a divorce for the misconduct of her husband would forego her right to dower if the statute did not, as it does, expressly preserve it to her. R. S. 1899, sec. 2947."

Having held that the 24th street property is not jointly acquired property, but is the separate property of the wife, defendant herein, we may logically conclude that the decree of the court holding the same as part of their joint accumulations is inequitable and unjust. Under the facts and circumstances in this case, the court should have decreed the 24th street property the separate property of defendant and to have barred the plaintiff of any right or interest therein. The judgment of the court holding the 24th street property part of the joint accumulations of plaintiff and defendant and awarding the same to defendant as such is reversed, with directions to set off said property to the defendant as her separate property and bar the plaintiff of any interest therein.

Having held that the 24th street property is the separate and distinct property of the defendant, we deem it only just to the plaintiff to say: When the court granted plaintiff a divorce from the defendant, said judgment automatically relieved the plaintiff of all liabilities incumbent upon him, accruing dur-

ing their marriage, in so far as it relates to the 24th street property.

## The Homestead.

The court in awarding and settling the property interests of plaintiff and defendant awarded the "homestead" to plaintiff.

"It is therefore considered, ordered, and adjudged by the court that the plaintiff, J. J. Bruce, be and hereby is awarded and decreed to be the owner in fee simple of the home place in which he now lives and known as 528 N. 9th St., in the city of Muskogee, Okla., described as the north 66 feet of the west 100 feet, of lot 1, in block 235, free and clear of all claims of the defendant, Ida B. Bruce of whatsoever nature or kind."

The above-described property is the homestead of the plaintiff and defendant and is part of their joint accumulations, since marriage, the title to which is now in the name of plaintiff. This property, known as the "9th street property," is the homestead of plaintiff and defendant. The property was purchased by plaintiff and defendant some years ago for a home. It seems from the evidence they paid an exorbitant price for the same at the time of purchase, but the court fixes the value of said property to be about $2,500 with a mortgage of nearly $900 and an unpaid tax in the sum of $437.95 against it. This would leave plaintiff and defendant an equity of $1,200 or $1,300 in the homestead. The evidence shows that defendant was the owner of 40 acres of land at the time said homestead was purchased; that plaintiff induced the defendant to mortgage said land for $500, the proceeds of which were paid on the home, with the understanding that plaintiff would pay said mortgage. The plaintiff failed to pay said mortgage and the defendant has lost the property. The record further shows that defendant's sister, Mrs. Lula B. Thompson, owned a piece of town property in Muskogee, Okla., which property is located on 25th street. The record shows that Mrs. Thompson executed a trust deed to the defendant, the defendant then borrowed $1,250 on said property, which $1,250 was paid as part of the purchase price of the home where plaintiff and defendant now live. We find from the evidence that defendant did contribute $1,750 towards the purchase price of the homestead; that the $1,750 so contributed by her was obtained by her from her people as heretofore narrated by the court; that said money so contributed by defendant in the purchase of said property was not part of the joint accumulations of plaintiff and defendant during marriage, but is part of defendant's separate property. The court further finds that the amount of money so

contributed by defendant toward the purchase of said homestead far exceeds the equity of both plaintiff and defendant in said homestead.

The trial court decreed the homestead to plaintiff. After a careful study of the record in this case regarding the purchase of the 9th street property, which the court has found to be the homestead, we find and hold that $1,750 of the purchase price was paid by the defendant; proceeds derived from defendant's separate estate, in the manner above mentioned in this opinion. So, under the law, the amount paid by defendant toward the purchase price of the homestead out of her separate property should be returned to her or she should be given a lien against the property superior to that of the plaintiff. The court having heretofore held the 24th street property to be the separate property of defendant and having further held, when the divorce was granted, plaintiff was relieved of any and all legal obligations pertaining to his wife's separate property which accrued to him by virtue of marriage, and that under these circumstances defendant must assume and pay all liens and incumbrances against the said 24th street property, it would now be illogical, inequitable, and unjust for the court to hold that the defendant could be deprived of her interest in the homestead.

The defendant in her testimony on cross-examination regarding the purchase of this home testified as follows (C.-M. 228):

"Q. Now you testified there was another piece of property you acquired, where is that? A. Well, the house we live in. I put $1,250 and $500 out of the 40 acres. Q. Now, don't you know as a matter of fact that the acquisition of this property was simply through the efforts of Mr. Bruce as a lawyer? A. No. sir. * * * He didn't have a practice until I married him. Q. Yes, we know that. As to this property on 9th street where you now live, you didn't put any money in that? A. $1,250 out of that piece of land. I owe my sister now. * * * My sister didn't deed him nothing; she deeded it to me. * * * Well, my sister deeded them to me. * * * Well, if he has anything else, let him state. These two pieces I know I paid for."

The plaintiff corroborates the defendant's testimony as to the amount she paid on the purchase of the homestead, at least in reference to the $1,250 payment. Plaintiff testifies (C.-M. 237):

"Q. You heard your wife testify about a mortgage that was placed on that property and that the proceeds went into the 9th street home? A. Well, when I bought the 9th street property I borrowed $1,000 from

F. B. Martin to finish out a cash payment. Of course, I didn't get the full $1,000. That mortgage was made on October 25, 1921, about the time I purchased that house and it was due in one year."

The record shows the $1,000 mortgage above mentioned by plaintiff was paid by the execution of a new mortgage on the 24th street property in the sum of $1,250 in a building and loan company.

It is a well-settled principle of law that in the trial of divorce actions the court is clothed with power to settle the property rights of the parties. Section 505, C. O. S. 1921, relative to the proposition under discussion, reads as follows:

"And for the control and equitable division and disposition of the property of the parties, or either of them as may be proper, equitable and just, having due regard to the time and manner of acquiring such property."

The record shows that plaintiff and defendant during marriage accumulated or acquired some interest in a large amount of property (real estate), as shown by the court in its judgment; that all of said property except the 24th street property and the $1,750 invested in the homestead by the defendant out of her separate property was accumulated by them after and during marriage and in law represents their joint accumulations.

The plaintiff testifies that his income from his law business is from $5,000 to $7,000 per annum. Notwithstanding the joint accumulations of all this property and the lucrative income of plaintiff of from $5,000 to $7,000 per year, the court did not see fit to award defendant any part of this community property except the 24th street property and the defendant her separate property, neither was the defendant granted any alimony. We will presume that the court in disposing of the property rights of the parties concluded that the 24th street property and the $1,750 paid by defendant on the homestead were not separate property of the wife.

Basing our judgment on the record in this case, it is our opinion, and we so hold, the wife was not decreed any part of the joint accumulations, except a 1/6 interest in 400 acres of land found to be worth 66 and 2/3 dollars.

The claim is made that defendant was awarded the 24th street property, valued at $2,500. Yes, the court did decree the defendant the 24th street property, but the evidence clearly shows that said property is the separate property of defendant and is no part of the joint accumulations. When the court awarded the 24th street property to defendant it did no more than return to defendant that which has at all times, since the property was acquired, belonged to her, but returned it to her with a $1,250 mortgage against it.

This record further shows that the 24th street property is covered by a mortgage of $1,250, heretofore mentioned; that under the holding of this court in this case, plaintiff is not legally bound to pay said mortgage. So, it is very apparent, if the defendant ever realized anything out of this property, she must pay the indebtedness against it.

In the case of Tobin v. Tobin, 89 Okla. 12, 213 Pac. 884, this court held:

"'Jointly acquired property,' within the meaning of Rev. Laws 1910, sec. 4969 (Comp. Stat. 1921, sec. 508), is that accumulated by the joint industry of the husband and wife during the marriage; and, if a divorce is granted to either, an equitable division thereof should be made."

The record clearly shows, and we so hold, that the property accumulated during marriage and now owned by them has in no sense been equitably and fairly distributed between the plaintiff and defendant.

When the court awarded the homestead to plaintiff, it took away from the defendant $1,750 of her own money and gave it to the plaintiff, thereby depriving her of a home for herself and children.

Wherefore, it is by this court considered, ordered, and adjudged that the judgment of the trial court awarding and decreeing the homestead of plaintiff and defendant to the plaintiff is reversed, set aside, and held for naught, with directions to the trial court to decree the possession of the homestead described in this record to the defendant as a home for her and her children, until the youngest child shall have become 21 years of age.

It is further considered, ordered, and adjudged that plaintiff be, and is hereby, ordered to pay the indebtedness against said property, together with the taxes now due and unpaid, and all taxes assessed against said property from year to year until the youngest son shall have become 21 years of age.

It is further considered, ordered, and adjudged that the defendant be, and is hereby, granted a lien in the sum of $1,750 against the said homestead, subject, however, to the existing indebtedness against said property.

The judgment of the trial court disposing of the property of the plaintiff and defend-

ant, other than that set out in this opinion, comprising their joint accumulations since marriage, is affirmed.

### Custody and Care of Children.

Plaintiff and defendant have been married about 20 years; three children have been born to them, three boys now about 14, 16, and 18 years of age. At the time of the granting of the divorce, the care and custody of the children was by the court awarded to the plaintiff, the father.

Section 507, C. O. S. 1921, provides:

"When a divorce is granted, the court shall make provision for guardianship, custody, support, and education of the minor children of the marriage, and may modify or change any order in this respect whenever circumstances render such change proper, either before or after the final judgment in the action."

The husband, plaintiff herein, brought this action, basing his right to a divorce on the 6th and 9th grounds for divorce as provided by our statute.

The 6th ground: "Extreme cruelty."

The 9th ground: "Gross neglect of duty."

Plaintiff says in his petition, based on extreme cruelty and gross neglect of duty:

"The defendant herein is a common gossip, a disturber of the peace of the neighborhood in which she lives, neglects her household duties, untidy housekeeper, will not cook his meals; that she quarrels at, nags, and harasses him; that her conduct is detrimental to his business and his health, and that it is impossible for him and his wife to live together.

"Plaintiff further alleges that his wife is cruel to him; that she accuses him of having improper relations with other women; that she has jeopardized his life."

Defendant, however, denies nearly all of the allegations of plaintiff's petition:

"Defendant says that plaintiff's evidence is insufficient, and does not support the judgment of the trial court granting plaintiff a divorce."

The only testimony in this case except that of the plaintiff which tends to support the grounds of extreme cruelty and gross neglect of duty, as alleged by the plaintiff, is very short, and is as follows:

Mrs. E. Weaver, called as a witness by the plaintiff:

"Q. Did your husband procure such employment (employment in the school)? A. He did not. Q. Do you know the reason for that? A. A letter was written by Mrs.

Bruce. (Objected to and sustained by the court. Witness excused.)"

Mrs. J. B. Smith, called as a witness by plaintiff:

"Q. Are you acquainted with his wife, Mrs. Ida B. Bruce? A. I am. Q. How well acquainted with his wife, Mrs. Bruce, are you? A. Oh, fairly well acquainted. Q. Did you ever have occasion to visit her home? A. Well, I have been there about two times. Q. Do you know her reputation in the community for being a gossip and a bearer of false rumors? A. Yes, I think I have an idea. Well, she has the reputation of being a trouble maker and a disturber of the peace."

### Cross-Examination.

"Q. You are also the wife of counsel of plaintiff? A. I am. Q. You are also a stenographer in his office? A. I am. Q. Has Mrs. Bruce talked to you? A. Well, she has talked to me—she talked to me—she told me that Mr. Bruce was going to see a Mrs. Booton. Q. You were employed by Mr. Bruce at one time, were you not? A. Yes, I was a public stenographer and was employed by Mrs. Bruce and Mr. Walker."

Mrs. R. E. Stewart, called as a witness by plaintiff:

"Q. Are you the wife of R. Emmet Stewart, the lawyer? A. Yes, sir. Q. Did you visit in her home (Mrs. Bruce)? A. No. Q. Has she ever visited you? A. No. Q. Do you know what Mrs. Bruce's reputation in the community where she lives is for truth and veracity—good or bad? A. It is bad. Common gossip."

### Cross-Examination.

"Q. Has Mrs. Bruce ever gossiped to you? A. No, she has never gossiped to me."

The above and foregoing testimony is the only testimony in this record, except that of the plaintiff himself, even tending to cast any reflection upon the defendant's character. One of the witnesses is the wife of plaintiff's attorney; is now stenographer for her husband and was at one time the stenographer of plaintiff. Mrs. R. Emmet Stewart, the wife of a lawyer, admits she never visited Mrs. Bruce's home and that Mrs. Bruce never talked to her. A third lady was called as a witness in behalf of plaintiff. An objection was interposed and she was excused without giving any testimony. We make no comment on this testimony as to the relevancy, competency, and materiality, except to say that we think it in no wise reflects any discredit upon the good name of this defendant.

The record in this case clearly shows that the defendant is a hard-working, kind, duti-

ful wife and mother. She became the wife of this plaintiff when he was young, unknown and poor. She and her people for many years made it possible for him to have something to eat and wear, while getting a start in his chosen profession. She has borne for him four children, one of whom has departed this life. The three that are living have grown from infancy to sturdy young manhood. She has struggled through poverty and great humiliation in order to rear these boys and make useful citizens of them. She loved them as she loves her soul, and they love her. Her people have contributed hundreds of dollars towards the purchase of a home, not only for herself and children, but for this plaintiff also. She has sacrificed, borrowed, and begged, cooked, made, washed, and mended, to keep these children in school. She is a devout member of the church and has reared her children in the church and Sabbath school. She has planted trees, raised gardens and flowers in order to beautify a home for her family. She has entertained, cared for, and cooked for hundreds of plaintiff's clients and their friends, often, too, when the larder was low. The trial court, for some reason, not shown or disclosed by the record, has deprived her of her home and children. She now comes to this court, on appeal, praying for home and children. Courts will not deprive a mother of the custody of her children where the record clearly shows that she is a fit person to have the custody and care of them. Courts know that mother love is a dominant trait in the heart of a mother, even in the weakest of women. It is of divine origin and in nearly all cases far exceeds and surpasses the parental affection of the father. Every just man recognizes the fact that minor children need the constant bestowal of the mother's care and love. It is for these reasons courts are loath to deprive the mother of the care and custody of her children, and will not do so, as above remarked, unless it clearly appears that she is an improper person to be intrusted with their care and custody.

Plaintiff in his petition further alleges:

"That said defendant has been extremely negligent in conducting her home duties, in keeping of the home; preparing meals and providing for and maintaining the home as a faithful wife should."

We are unable to find a single word in the testimony of any witness, except the plaintiff, supporting the above allegation. In fact no question regarding defendant's house-keeping and her duties as a faithful wife was ever propounded to any witness on the stand, except the defendant, and her children, and plaintiff's brother.

We think, and hold, in the light of this testimony and the facts and circumstances as disclosed by this record, it is by far to the best interest of these children that they be placed in the care and custody of their mother, the defendant herein. We find the defendant to be the most suitable person to have the care of her children. Her children have all fervently testified in her behalf in all matters before the court, and they want to live with their mother, the defendant herein.

It is, therefore, ordered and adjudged that the judgment of the trial court awarding the care and custody of these children to the plaintiff is reversed, with directions to decree the care and custody of the children to the defendant.

And it is further ordered that the plaintiff pay to the defendant for her use and for the care and maintenance of herself and children the sum of $50 per month, the same to be paid to the clerk of the district court of Muskogee county, Okla., on the 1st day of each and every month until the oldest child shall have become 21 years of age.

It is further ordered that, after the oldest child shall have become 21 years of age, the plaintiff shall continue to pay the sum of $35 per month until the second or next oldest son shall have become 21 years of age.

It is further provided that, when the second son shall have become 21 years of age, the plaintiff shall pay the sum of $20 per month to the wife until the youngest son shall have become 21 years of age.

It is further ordered that the clerk of said court is directed to pay said sums of money to the defendant as soon as the same is paid into his hands, and that no order of the court will be necessary to authorize the clerk to pay said money to the defendant as herein directed.

We are of the opinion that the circumstances warrant it, and therefore direct that plaintiff be restrained by proper order of the trial court from interfering in any manner with defendant's custody of said children, and from in any manner disturbing or molesting defendant in her possession of the property awarded her.

MASON, C. J., and HEFNER, RILEY, and SWINDALL, JJ., concur.

HUNT, J., concurs in conclusion.

ANDREWS, J., disqualified.

LESTER, V. C. J., absent.

CLARK, J., dissents.

Note.—See under (1) 9 R. C. L. p. 471; R. C. L. Perm. Supp. p. 2477. (3) 11 A. L. R. 1394; 9 R. C. L. p. 446; R. C. L. Perm. Supp. p. 2471. (7) 9 R. C. L. p. 480; R. C. L. Perm. Supp. p. 2481. (8) anno. 41 L. R. A. (N. S.) 564; 4 A. L. R. 1115; 9 R. C. L. p. 475; R. C. L. Perm. Supp. p. 2478. See "Divorce," 19 C. J. §479, p 193, n. 32; §774, p. 333, n. 31; §778, p. 335, n. 65; §795, p. 343, n. 10; §797, p. 344, n. 26; §800, p. 346, n. 47; §809, p. 349, n. 22; §813, p. 353, n. 87; §823, p. 360, n. 19.