### MARCUM v. MARCUM.

No. 34648.

Supreme Court of Oklahoma.

Jan. 12, 1954.

Miskovsky & Miskovsky, Oklahoma City, for plaintiff in error.

T. K. Klinglesmith, H. M. Shirley, Coalgate, Hobert G. Orton, Ada, for defendant in error.

PER CURIAM.

This action was commenced in the District Court of Coal County, Oklahoma, by Floyd Marcum against Sybil Marcum, now Watson, on the 21st day of May, 1947. The relief sought was an absolute divorce and custody of minor child, namely: Jessaline Marcum.

At the time of the filing of the petition, defendant Sybil Marcum and the minor child were residents of the State of California.

On August 28, 1947, answer and cross-petition was filed by defendant in which she denied all of the allegations of the petition, and sought in her cross-petition the exclusive care, custody and control of the minor child, together with other relief, to which plaintiff filed reply.

On September 25, 1947, the case was tried and judgment was entered denying the plaintiff, Floyd Marcum, any relief, and a judgment was entered in favor of the defendant on her cross-petition upon the ground of cruelty as set forth in the answer and cross-petition. In the decree appears the following finding:

"The court further finds that the defendant is willing and desirous of assuming the responsibility of the custody, care, control and education of the minor child of plaintiff and defendant, and that the defendant is a fit and proper person to have and be awarded the custody, care, control and education of said child."

Pursuant to this finding the custody and control of said minor was granted to the defendant.

The decree further provided that the plaintiff should be awarded the right and privilege of visiting with and seeing said child at all reasonable times, and should be granted the right and privilege of having said child visit him in his home during the summer vacation period of each year. Under the terms of the decree the plaintiff was required to call for said child at the home of the defendant "wherever she may be" at the end of the school term, and before the commencement of school in the fall should return the child to the mother and should pay all expenses incident to transportation of said child to and from the home of the defendant.

The decree further provided that the plaintiff was to have the custody of the child until October 2, 1947, at which time the same should be returned to the defendant.

The decree provided that the plaintiff was to pay to the defendant while she had the custody of said child the sum of $50 per month child support.

. Thereafter, on August 13, 1948, a motion to modify decree was filed in said cause by

Floyd Marcum. In the motion to modify it was alleged that since the entering of the original divorce decree herein the said Sybil Marcum, the mother of said child, had remarried; that she married a Mr. Watson, who was the father of two children by a previous marriage, and that they were living in a factory settlement district in Oakland, California; that living quarters for the which were inadequate and unsatisfactory for a child of tender years; that the mother of said child was working and would not stay at home and properly care for the child. He prayed that the care and custody of said child be granted to him with the right of visitation on the part of the child's mother.

On September 9, 1948, the defendant filed a response to the motion to modify in which she denied they were living in a factory settlement district and that the living quarters were inadequate, but stated that they were occupying a six-room home which was owned by them and paid for. She further stated that her husband was gainfully employed and had been maintaining the household; that she was not employed but devoted her whole time to her household duties.

Thereafter, on September 9, 1948, the matter came on for further hearing upon the motion to modify the decree and the response thereto with all parties being present in person and by attorneys.

Judgment was entered denying the relief sought in the motion. Pursuant to said hearing the court made the following finding:

"That the application of plaintiff to amend the original decree entered herein, by granting the care and custody of Elizabeth Jessaline Marcum, a minor child, to the plaintiff with the right of visitation to the defendant, has not been sustained, that a change in conditions since the entry of the decree does not exist which would require the modification of said decree, that plaintiff's motion should be denied."

In this decree it was further provided that the plaintiff should forthwith deliver said child to the custody and control of the mother of said child.

Thereafter, on October 14, 1948, an order was entered sustaining a motion for new trial and setting the same for further hearing on December 22, 1948. By agreement the hearing was advanced to December 21, 1948.

On December 21, 1948, further hearing was had and all persons were present in person and by counsel.

In this decree or order the court made the following finding:

"That the application of plaintiff to modify the original decree herein, by granting the care and custody of Elizabeth Jessaline Marcum, the minor child, to the plaintiff, with right of visitation to the defendant, has not been sustained, and that a change in conditions since the entry of said decree does not exist which would require the modification of said decree in said respect, and that plaintiff's motion in this regard should be denied; and the court further finds that the custody of the minor child should remain with the defendant, with visitation privileges of the plaintiff, as provided in the original decree herein."

In this order or decree the child maintenance payments were reduced to $25 per month, which would begin January 1, 1949.

Thereafter, on May 18, 1949, application to increase support money was filed by the defendant. It was set for hearing, but there was a continuance on plaintiff's request.

On July 2, 1949, an application for citation was filed by the plaintiff setting forth that he had made a trip to California on June 17, 1949, and that the defendant had refused him custody of said child. The citation was set for hearing on July 18, 1949.

Thereafter, on July 14, 1949, an instrument designated as "Answer to Application to Increase Support Money" was filed by plaintiff. In the prayer of this answer request is made to modify the original decree by granting the custody of the minor child involved to Mr. and Mrs. Jess Marcum, the father and mother of the plaintiff.

On July 5, 1949, an order was entered by the District Judge directing the Sheriff to seize the body of Elizabeth Jessaline Marcum wherever it may be found and deliver the same to Floyd Marcum, the plaintiff. The sheriff of Coal County, accompanied by Floyd Marcum, the plaintiff, proceeded to California, where the minor child was in the custody of her mother. A writ of habeas corpus was issued by the Superior Court of the State of California in and for the County of Alameda. As a result of the hearing the Judge of the Superior Court in California, after a promise by the plaintiff to return the child to its mother in California not later than September 10, 1949, permitted the child to be returned to Oklahoma.

Thereafter, on August 7, 1949, an order was entered by the District Judge of Coal County, Oklahoma, granting the exclusive custody of said minor to Jess Marcum and Mamie Marcum, grandparents of said child, until a full hearing could be had. Thereafter, application was filed by the defendant to vacate said order and grant exclusive custody to her.

On February 3, 1950, the matter came on for further hearing and all parties interested being present in person and by their respective attorneys.

At the conclusion of said hearing judgment was entered modifying the original decree entered September 25, 1947, and granting the exclusive custody of said minor child, Elizabeth Jessaline Marcum, to her grandparents, Jess Marcum and Mamie Marcum, with the right of visitation to the mother of said child at any reasonable time, and enjoined the said defendant from removing said child from the State of Oklahoma.

Thereafter a motion for new trial was filed, heard and overruled, and this appeal lodged.

It has been said: "Divorce is a misfortune under any circumstances. It is permitted by law to an innocent party who chooses it rather than continue the greater misfortune. It is a choice between two calamitous conditions. At best it entails suffering and sacrifice on the innocent."

This case is a perfect example of the wisdom contained in the above statement.

On September 25, 1947, after a full and complete hearing, the Honorable Trial Judge awarded custody of the minor involved herein to the defendant. Pursuant to the terms of the divorce decree the mother turned the custody of the child to its father in 1948, and the father refused to return the custody of the child to its mother, but instead, filed a motion to modify, which was heard by the Hon. Trial Judge on September 9, 1948. After a full hearing a specific finding was made by the trial court that no cause existed for a modification, and delivered custody back to the defendant.

Again on July 13, 1949, the father requested custody of the child from its mother. Because of illness, custody was refused and a second request was made by the father at which time the mother requested that a bond be posted to assure the father would return the child at the proper time as required by the court. After and pursuant to a hearing before the Superior Court in California, the father was permitted to return the child to Oklahoma, upon the assurance by him that he would return it to California as had been by the court required.

The father did not return said child, but immediately filed another motion to modify. After a lengthy hearing the Honorable Trial Judge, who had succeeded the original Trial Judge, took the custody of said child permanently from said mother and delivered its exclusive possession and control to its grandparents.

Title 30 O.S.1951 § 12, provides in part:

"Of two persons equally entitled to the custody in other respects, preference is to given as follows:

"1. To a parent. * * *"

Title 30 O.S.1951 § 11, provides in part:

"In awarding the custody of a minor [child] * * * the court or judge is to be guided by the following considerations: 1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent

preference, the * * * judge may consider that preference in determining the question."

The defendant complains of the action of the trial court in changing the custody of the minor child because the order of the trial judge in making said change is contrary to law and not sustained by the evidence.

She further alleges that the granting of the custody of the minor child to the paternal grandparents under the evidence is an abuse of discretion.

With the contention of the defendant we agree. The court will not deprive a mother of the custody of her children where the record clearly shows that she is a fit person to have the custody and care of them, and award custody to the grandparents.

In the case of Bruce v. Bruce, 141 Okl. 160, 285 P. 30, 37, Judge Cullison, speaking for the court, stated:

" * * * Courts know that mother love is a dominant trait in the heart of a mother, even in the weakest of women. It is of divine origin, and in nearly all cases far exceeds and surpasses the parental affection of the father. Every just man recognizes the fact that minor children need the constant bestowal of the mother's care and love. It is for these reasons courts are loath to deprive the mother of the care and custody of her children, and will not do so, as above remarked, unless it clearly appears that she is an improper person to be intrusted with their care and custody."

The original trial court in this case specifically found that the mother of the minor child involved herein was a fit and proper person to have the care, custody and control of said minor. The trial court found against all of the allegations made by the father with reference to the mother.

On every occasion when the matter of custody came on for hearing before the original trial judge he refused to modify the decree, but in each instance held that the circumstances had not changed and that the mother of said child should be entrusted with her care, custody and control.

Title 12 O.S.1951 § 1277 provides:

"When a divorce is granted, the court shall make provision for guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect, whenever circumstances render such change proper either before or after final judgment in the action."

In construing this section our Court has in the case of Ford v. Ford, 206 Okl. 561, 245 P.2d 75, announced that the rule is qualified to the extent that where a change is made from the order previously made, there must be shown a change in the condition of the parties to justify such modification.

In the case of Scroggin v. Griffin, 185 Okl. 456, 94 P.2d 244, 245, it was held:

"In order to justify a court in depriving a parent of the care and custody of his child, the evidence offered to establish the unfitness of the parent must be clear and conclusive, and sufficient to show the necessity for so doing to be imperative."

In this same case this court held:

"The unfitness which will deprive a parent of the right to the custody of his minor child must be positive and not comparative; and the mere fact that the child might be better cared for by a third person is not sufficient to deprive the parent of his right to its custody."

In this case it was held:

"The right of the father to the custody of his child is superior to that of grandparents, unless it is shown conclusively that the father is unfit as to character and habits and is incapable of providing for the child's support, and for its intellectual and moral development. This court in many decisions has laid down rules defining the powers of the courts in cases involving the custody of children. In the case of Brooks v. Preston, 134 Okl. 272, 273 P. 345, 346, where the contest was between the father and the grandparents of the child, the court said: 'In a contest be-

tween the father and the grandparents, in order to deprive the father of the custody of his child, it must be shown that his condition in life, or his character and habits, are such that provision for the child's ordinary comfort and contentment or for its intellectual and moral development cannot be reasonably expected at the parent's hands.'"

In the case of Goertzen v. Goertzen, 194 Okl. 207, 148 P.2d 982, 983, this court held:

"In awarding the custody of a child, as between divorced parents, the court is to be guided by what appears to be for the best interest of the child. Freeman v. Freeman, 190 Okl. 74, 120 P.2d 627. As between parents adversely claiming the custody of a child, neither is entitled to its custody as of right, but other things being equal, if the child be of tender years, it should be given to the mother. 30 O.S.1941, § 11. Either the father or the mother would have a preference right to the custody of a child over a grandparent unless the special unfitness of parent is clearly shown and the moral and intellectual development of the child cannot reasonably be expected at the parent's hands. * * *"

In the case of Sherrick v. Butler, 175 Okl. 538, 53 P.2d 1097, 1099, quoting from the opinion this court held:

"There was no evidence offered by the defendants in the instant case to establish that the mother was unable or unfit to care for her child. There was some question of an irregularity in the obtaining of her divorce from the child's father, a few years prior to the trial, but the record in this respect is not so clear or satisfactory as would warrant placing upon her such stigma as would render her unfit to care for the child. In this connection, it was stated by this court in Jamison v. Gilbert, 38 Okl. 751, 135 P. 342, 47 L.R.A., N.S., 1133, that 'The unfitness which will deprive a parent of the right to the custody of his minor child must be positive and not comparative; and the mere fact that his minor child might be better cared for by a third person is not sufficient to deprive the parent of his right to its custody. It is not sufficient, to establish the unfitness of a parent for the custody and control of his minor child, to show that he has some faults of character or bad habits; it must be shown that his condition in life or his character and habits are such that provision for the child's ordinary comfort and contentment, or for its intellectual and moral development, cannot be reasonably expected at the parent's hands.'"

█ No place in the record in this case does there appear any testimony which in any manner whatsoever tends to prove to the slightest degree that Sybil Marcum, now Watson, plaintiff in error herein, the mother of the minor child, was lacking in any respect of the character and qualities necessary to good motherhood. The record is wholly to the contrary, and sustains amply the finding and judgment of the original trial judge herein.

The record in this case corroborates the testimony of the mother that she has and will do everything possible for her daughter.

On every occasion when a hearing was had involving the custody of her daughter (except one time when she was ill), this mother came all the way from California to Oklahoma attempting to protect her daughter, and to retain custody of her daughter.

The trial court for some reason, not shown nor disclosed by the record, has deprived her of the custody of her daughter.

█ After reading the entire record in this case we are convinced that the judgment of the trial court is against the clear weight of the evidence, and that it was not for the best interest of said child that she be taken from the custody of her mother and placed with her grandparents.

For the reasons hereinabove stated, it is the judgment of this court that the minor child be returned to the custody of her mother, and that judgment be entered herein not inconsistent with the views herein expressed.

Judgment is reversed.

This court acknowledges the services of Attorneys Ben L. Murdock, Lamoin Oldham and Carl Pinkerton, who as Special Masters aided in the preparation of this opinoin. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, C. J., and WELCH, CORN, ARNOLD, O'NEAL and BLACKBIRD, JJ., concur.

JOHNSON, V. C. J., and DAVISON and WILLIAMS, JJ., dissent.

DAVISON, Justice (dissenting).

This is a very unusual case in which two different district judges participated at different times. The first judgment gave the custody of the child to the mother with the right of visitation by the father, and the second judge, at a later date, gave the custody of the child to the paternal grandparents.

After custody of the child was given to the mother in the first instance, the mother remarried a resident of California who was the father of two children; one of said children, a boy, lived with the father and was about the same age as the child in question.

I am mindful of the fact that legally the mother has the first right to the child; however, the best interest of the child must be considered at all times.

This case is typical of the evils of divorce when children are involved. I am quite confident from the record that the mother and both grandparents are fine outstanding people.

The case presents the issue that the child in question was born in Coal County, and has spent practically all of her life there. All of her friends are there. At the time of the last trial she was eleven years of age, and during the trial, she stated to the trial court that she wanted to stay with her grandmother and grandfather. This statement, no doubt, greatly influenced the judgment of the trial court.

At the present time the child is sixteen years of age. She has been going to church and Sunday school in Coalgate and has been attending the public schools there. She has been taking piano lessons, and, no doubt, she is now attending high school. I doubt very much if it would be to the best interest of this young lady to take her out of school in the middle of a term, especially at her age, and force her, against her will, to live in California, away from her friends, and with a stepfather and stepbrother of her age. There is no doubt but what she is getting excellent care under the custody of her grandparents. The record shows that they are financially able to send her to any college of her choosing.

In my opinion, this young lady, under all the circumstances of the case, should be permitted a choice as to her care and custody. With this thought in mind, I believe, under the reversal of the judgment of the majority opinion, it would be proper to give this young lady an opportunity to appear before the present (new and third) district judge, so that he can determine what would be best for her interest and welfare, after taking into consideration her present desire in the matter.

This court has held many times that in the determination of a minor child the right of a parent to the custody of such minor child is of great importance in determining right of custody, but it is not an absolute right and is qualified by consideration affecting the welfare of the child. Osburn v. Roberts, 197 Okl. 206, 169 P.2d 293.

We have also held that in such matters of custody the child's own wishes and choice should be consulted and given great weight, if the child be of an age and capacity to form a rational judgment, Garlin v. Garlin, 154 Okl. 230, 7 P.2d 463.

Since I am of the opinion, that under all of the facts and circumstances of the case, this young lady should have an opportunity at this time to present her wishes as to her custody, I respectfully dissent.

JOHNSON, V. C. J., concurs.