Harriet SYLVAN, Plaintiff In Error,

v.

David Ralph SYLVAN, Defendant in Error.

No. 39258.

Supreme Court of Oklahoma.

July 10, 1962.

G. C. Spillers, G. C. Spillers, Jr., Jack R. Givens, Tulsa, for plaintiff in error.

Rosenstein, Mesirow & Fist, Tulsa, for defendant in error.

BERRY, Justice.

The parties who appear here in the same relative position as they appeared in the trial court, will be referred to herein as they appeared in said court.

In her petition, plaintiff alleged that she and defendant were married September 30, 1956; that a daughter was born of the marriage on Oct. 26, 1957; that she and defendant were incompatible. She prayed for a divorce, custody of the minor child, $200.00 per month for support of the child, $75,000.00 as permanent alimony, title to the home of the parties and the furniture therein, temporary alimony, child support and other temporary relief.

In his answer, defendant denied all allegations of the petition excepting those relating to the marriage and birth of the child. By way of cross-petition he sought a divorce on the grounds of incompatibility. In so far as material, plaintiff, in her answer to the cross-petition, denied the allegations made therein.

Following trial of case to the court, the court on April 15, 1960, found and adjudged that the parties were incompatible and that each should therefore be divorced from the other; that plaintiff have the care and

custody of the child during the major portion of each year; that plaintiff have $350.-00 a month as child support until the child reached the age of six and thereafter $150.-00 a month as child support; that plaintiff have as permanent alimony $4,000.00; that the alimony be paid at the rate of $200.00 a month; that she take all wedding gifts and that defendant take all other property; that plaintiff's attorneys receive a total fee of $2,000.00, $500.00 of which had been paid; that plaintiff recover only $1,225.00 of expenses that she incurred in obtaining an audit of defendant's books and an appraisal of his property. From order denying plaintiff's motion for new trial which was directed to all portions of the judgment excepting the granting of a divorce, plaintiff perfected this appeal.

In support of her petition in error, plaintiff contends only that (a) "the trial court erred in making an' inadequate alimony and/or division of jointly-acquired property award to" her; (b) "erred in awarding merely $1,000.00 as suit money for her accounting and petroleum engineering expenses in the preparation of the case for trial"; (c) "erred in awarding plaintiff merely $2,000.00 as attorneys' fees". We will consider plaintiff's contentions in the order that same are above stated.

The trial court found in effect that there was no jointly-acquired property. Plaintiff contends that this finding is clearly against the weight of the evidence. As sustaining said contention, plaintiff points to the fact that it was proved that following the marriage, a residence and household furniture were acquired and that certain partnerships in which defendant owned an interest increased their oil and gas holdings. She also points to evidence which she asserts shows that defendant's net yearly earnings exceeded the total annual expenditures made by the parties.

As refuting plaintiff's contention, defendant points to the fact that as of date of marriage his net worth was $71,914.25 and as of date of trial his net worth did not exceed $67,720.02. He also points to evidence which tends to show that the yearly expenditures made by plaintiff and defendant exceeded his yearly net earnings. Defendant asserts that there is competent evidence showing that the property which plaintiff asserts was jointly acquired during the marriage resulted from defendant's investing or expending money on hand as of date of marriage or proceeds from the sale of property owned as of said date. We find that such is the case.

In Tobin v. Tobin, 89 Okl. 12, 213 P. 884, we held that "jointly acquired property" within the meaning of 12 O.S. 1951 § 1278, is that accumulated by the joint industry of the husband and wife during marriage. See also Bruce v. Bruce, 141 Okl. 160, 285 P. 30. The evidence on the issue of "jointly acquired property" being in substance as above stated, we are of the opinion that the finding of the trial court on said issue is not clearly against the weight of the evidence.

The trial court found that defendant's net earnings during the marriage did not exceed $10,000.00 a year. This finding was apparently based upon Federal income returns that defendant filed during the period of the marriage. Plaintiff asserts that said returns, for reasons hereafter stated, failed to reflect actual net income.

Plaintiff points to the fact that a considerable portion of defendant's gross income was from oil and gas properties and that in computing net income from said properties for Federal income-tax purposes defendant took a depletion allowance of 27.50 per cent. She asserts that said allowance ($2,299.18 in 1956; $4,064.95 in 1957; $4,505.00 in 1958) in fact represented tax-free income and that in computing defendant's actual net income the depletion allowance should have been added to the net income shown on the returns for each year. We are unable to fully agree. Producing minerals are considered as wasting assets for the reason same are used up in capturing income therefrom. For said reason depletion should be considered in computing net income from oil and gas properties. See

United States v. Ludey, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054.

In the instant case no evidence was introduced which tended to show the amount of percentage depletion that should have been considered in computing actual net income from the oil and gas properties in which defendant owned an interest. We are, therefore, not at liberty to say that the amount allowed for Federal income-tax purposes is excessive.

Plaintiff points out that in 1959, defendant "took a flyer" and expended $7,094.79 in participating in drilling a test well for oil and gas which proved to be dry. In computing net taxable income for Federal income-tax purposes for 1958, defendant deducted the referred-to expenditure. Plaintiff contends that the expenditure should not be considered in computing defendant's net income for said year; or if considered, should be given but little weight in arriving at defendant's probable net income for years following the year in which the case was tried. This contention is apparently based on the proposition that the partnerships in which defendant owned interests purchased producing properties; that the drilling of a test well was without the course of their regular business, and that such a loss cannot be anticipated in the future. This contention so made is borne out in part by evidence relative to defendant's income for the first 8 months of 1959, which (excluding a casualty loss of $2,754.37) was in excess of $9,000.00. While the referred-to evidence tends to show that defendant's annual net income will probably exceed $10,000.00 for several years following 1959, the evidence cannot be accepted as conclusively establishing said fact. The oil and gas business is generally accepted as speculative and defendant may well have anticipated losses in the future which will serve to diminish his annual net income.

█ Irrespective of that which has been said, we are of the opinion that under the facts, the amount awarded defendant as alimony is inadequate. The parties lived together as husband and wife approximately four years. A child was born of the marriage. During the major portion of the marriage the parties lived in a residence that was given an appraised value of $16,500.00 as of date of trial. In excess of $6,000.00 was expended in furnishing the residence. The monthly living expenses of the family exceeded $800.00 a month. As of date of trial, defendant's net worth exceeded $67,000.00. His annual net earnings during the marriage were approximately $10,000.00 and his annual net earnings in the immediate future will probably exceed said amount. With one possible exception, the partnerships in which defendant owned an interest were solvent and prosperous.

We are of the opinion that under the facts, plaintiff should have been awarded alimony of $10,000.00, payable at the rate of $250.00 per month. While we appreciate that the rather generous allowance for child support (which award was subject to modification) does not inure directly to plaintiff's benefit, we have nevertheless given some consideration to said allowance in fixing the amount of alimony that should be awarded plaintiff.

In preparing her case for trial, plaintiff expended $1,000.00 in obtaining an audit of defendant's books and records and paid a petroleum engineer and an appraiser $2,764.00 to obtain an appraisal of the oil and gas properties in which defendant owned an interest and of the residence, furniture and a lot that defendant owned. Defendant also employed an auditor and appraiser who performed the same services as those employed by plaintiff. The trial court held in effect that the auditors and appraisers employed by defendant were competent and for said reason plaintiff was not justified in employing auditors and appraisers to duplicate their work. Under the facts we are unable to agree.

The trial court observed that the evidence tended to show that prior to the marriage, defendant led plaintiff, who was then a resident of Florida, to believe that he was a "rich Tulsa oil man." The observation is borne out in part by the fact that defendant

expended approximately $1,500.00 on an engagement ring and approximately $2,000.00 on a honeymoon to Jamaica. Also by the allegations of plaintiff's petition in which she sought $75,000.00 as permanent alimony, an award of the home of the parties and the furniture therein and other monetary relief. The defendant owned interest in the following named companies, which were in fact family partnerships, in the indicated percentages: Sylvan Printing & Stationery Co., 25%; Sylvan Producing Co., 25%; Altman-Sylvan Oil Co., 12½%; Standard Supply Co., 12½%; and Jada Oil Company, 50%. The oil and gas companies or partnerships owned interests in numerous producing leases.

Defendant does not contend that the matter of auditing and appraising the properties in which defendant owned an interest was not a sizeable task nor that the charge made by those who did such work in plaintiff's behalf was unreasonable. To the contrary, his contention appears to be that since he employed competent persons to do said work it was unnecessary for plaintiff to employ persons to do the same work; that those employed by plaintiff did not develop facts which were not developed by those employed by defendant. We note that neither party applied to the court for the appointment of an auditor or an appraiser.

The record shows that the audit made by auditors employed by plaintiff was largely duplicative, but such is not true of the appraisals made by those employed by plaintiff. The petroleum engineer who was employed by plaintiff made an intensive study of the oil and gas properties in which defendant owned an interest and in fact visited several of the leases. In connection with the study, the engineer prepared rather elaborate graphs and maps which were introduced in evidence. The trial court found in substance that the value of defendant's interests could have been determined "on the basis of so many dollars per day of daily production"; that while the engineer used three methods of determining values, all led to the answer obtained by using the quoted formula. The testimony of the engineer does not coincide with the finding. As we read the record, he testified that he used three methods in evaluating defendant's interests, one of which was apparently the "rule of thumb" or simple method that the court suggested should have been used; that each method or formula gave a different figure but that he was of the opinion that the method which developed a value of $79,000.00 was the most accurate under the facts. This was not the method that the court suggested nor did the method suggested by the court develop a value of $79,000.00. We add, that if all three methods had in fact showed the same answer, it is apparent that this would only have been learned following a study which developed the factors used in applying each method or formula. The value that the engineer placed upon defendant's interests in the oil and gas properties exceeded by some $30,000.00 the value given said interests by the petroleum engineer employed by defendant. It follows that something different and material was added by the testimony of the engineer whom plaintiff employed.

■ The fact that plaintiff believed that defendant was a wealthy man, together with the fact that defendant owned an interest in many oil and gas properties, and the further fact that the testimony of the appraisers employed by plaintiff developed pertinent and material facts, causes us to conclude that the trial court erred in not entering judgment in plaintiff's favor for a greater portion of the amount expended in preparing for trial and trying the case than was allowed. We are of the opinion that of the $3,764.00 claimed, $2,000.00 should have been allowed.

■ As reflected by remarks made by the trial court, he was of the conviction that too much time was devoted by plaintiff's attorneys in preparing for trial and in trying the case. This conviction appears to have been based largely upon the proposition that the testimony of auditors and appraisers employed by defendant fully developed all pertinent facts bearing upon the "money

phase" of the case and that as to plaintiff, other phases of the case could have been quickly tried with a minimum of preparation. As heretofore indicated, we are unable to agree. We are, therefore, of the opinion that the amount allowed as attorneys' fees was inadequate and that the allowance should be increased from $2,000.00 to $3,000.00, which allowance shall cover the services of plaintiff's attorneys on this appeal.

Reversed and remanded with directions to render judgment for plaintiff on the issues involving alimony, expenses incurred in preparing for trial and for attorneys' fees.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and HALLEY, JOHNSON and IRWIN, JJ., concur.

WELCH, DAVISON and JACKSON, JJ., dissent.