**Homer E. MAY, Appellee,**

v.

**Sylva Grace MAY, Appellant.**

**No. 50697.**

Supreme Court of Oklahoma.

June 12, 1979.

Meacham, Meacham & Meacham, Clinton, for appellee.

C. B. Graft, Graft, Rodolph & Cabaniss, Clinton, for appellant.

OPALA, Justice:

The review sought [1] concerns the quantum of conjugal interest a wife may be awarded in property purchased by her husband with his separate funds shortly after the marriage and [2] presents the question of whether alimony awarded as post-dissolution spousal support may be made terminable, absent an agreement of the parties, on contingencies other than those provided by law [death of either spouse or remarriage of wife].

At the commencement of divorce proceedings the husband was 74 and the wife 68. Each owned considerable property before the marriage. By the terms of their antenuptial agreement,[1] all their separate property was to retain its character and be managed separately. Neither was to assert claims against the property of the other.

The trial court awarded to wife one-half interest in the home and left the other half in husband. Title was to stand in them as tenants in common with wife retaining a possessory estate during her lifetime. She was also awarded support alimony of $200 per month, payable until the death of either spouse, her remarriage or vacation of the home. On wife's appeal the Court of Appeals modified the decree by [a] giving wife clear title to the home and [b] eliminating from the alimony award that provision which made it terminable on her vacation of the home. Husband seeks certiorari.

I

Husband's claims that, at the inception, the home in suit was in its entirety his separate property because, although acquired after marriage, it was purchased with his own funds.[2] Some time later he deeded to the wife one-third of his interest in that home as a gift. The expenses incurred during the marriage for all but the initial improvements made were paid by both spouses in proportion to their respective interests in the home [⅔ and ⅓]. They also kept separate accounts and managed their property consistently with the regime established by their antenuptial contract.

■ Husband asserts that the home, as his separate property, is not reachable for judicial division under the provisions of 12 O.S.Supp.1976 § 1278, because it is not part of "joint acquisitions". Jointly acquired property, he asserts, includes only those assets which were accumulated during the marriage by the joint industry of both spouses.[3] Wife insists her "joint industry" contribution to the home consisted of services as a housewife in performing household and other duties, without the benefit of a maid, while at an advanced age and in poor

1. Neither party challenges on appeal the validity of the antenuptial agreement. The trial court considered it effective.

2. Husband and wife were married nine months the first time. Their remarriage occurred one month after the original divorce. The home was purchased following their remarriage.

3. Property acquired during marriage as the result of industry, economy and business ability is jointly acquired property subject to the equitable division required by statute. *Tobin v. Tobin*, 89 Okl. 12, 213 P. 884, 889 [1923]; *Longmire v. Longmire*, Okl., 376 P.2d 273, 275 [1962]; *Sylvan v. Sylvan*, Okl., 373 P.2d 232, 234 [1962].

health.[4]  She lays claim to the home as a marital asset.

The property in controversy was acquired with husband's separate funds. Its purchase, though after the marriage in point of time, did not *ipso facto* invest the wife with any greater interest in that property than she would have had in the money [before it was spent for this purpose] if that money had remained intact in husband's separate pre-marriage account.  Her allowable claim to the home must hence be confined to the interspousal gift of one-third interest and to whatever other estate she may assert as a result of her status as husband's cotenant during the coverture.[5]

Three elements should be identified and isolated as relevant in determining the quantum of wife's claim in addition to her one-third interest: [a] acquisition cost of the entire property plus cost of improvements made [for which she paid her proportionate share], [b] increased value due to inflationary factors or other market-place forces producing appreciation in price levels [unrelated to efforts of labor] and [c] increase in value, if measurable, which is attributable to personal efforts of labor by the spouses.  The wife would be entitled to her one-third share of the cost of acquisition and improvements, as well as to a like part of any increment in value due solely to inflation or general market-place appreciation.  Moreover, if there be found any additional measurable increase in value of the home that may be attributable not to appreciation in price but purely to efforts of labor expended through services [whether in doing minor repairs and improvements or in performing day-to-day maintenance duties], such increase alone is reachable as a joint spousal interest for division between the parties on the basis of an equitable share.

The formula we fashion here for the determination of wife's interest is bottomed on the established rule that the enhancement in value of the separate estate of one spouse, attributable to personal efforts of labor by the other, constitutes jointly acquired property that is subject to division.[6]

Using this formula for establishing the quantum of wife's interest in the home, the trial court should have proceeded to effect a division of this asset between the parties and, in the absence of an agreement to the contrary, should have directed a complete severance of the common title so that the portion of the premises awarded each of them is free from claims or domination of the other.[7]  This could have been accomplished by setting the whole property apart to one party and awarding a money judgment to the other for the value of the latter's interest, with or without impressing a lien upon the premises to secure satisfaction of the adjudicated obligation.

## II

.The alimony judgment awarded for post-dissolution spousal support cannot stand be-

---

4.  Wife also contends that she purchased clothing and groceries from her separate funds, thus contributing to an increase in husband's net worth.  She claims that credit should be allowed her for the expenditure of her earnings and resources toward the marriage relationship.  The record reflects that husband established a joint checking account to which he contributed the majority of funds wife used to purchase groceries, clothing and medicine. She occasionally resorted to her separate funds for some incidentals, although there was no indication that she did this because joint resources were lacking or placed beyond her reach.  The trial judge may have considered these asserted contributions to be purely voluntary or *de minimis*.  The evidence is too scanty for us to give this claim a different consideration.

5.  An interspousal gift operates as transfer to donee of a separate property interest.  *Moyers v. Moyers*, Okl., 372 P.2d 844, 846 [1962]; *Shackelton v. Sherrard*, 385 P.2d 898, 900 [1963].

6.  *Moyers v. Moyers*, supra note 5; *Williams v. Williams*, Okl., 428 P.2d 218, 222 [1967]; *Collins v. Okla. Tax Comm.*, Okl., 446 P.2d 290, 295 [1968]; *Kirkland v. Kirkland*, Okl., 488 P.2d 1222, 1227 [1971]; 12 O.S.Supp. 1976 § 1278.

7.  *Kupka v. Kupka*, 190 Okl. 392, 124 P.2d 389, 391 [1942]; *Collins v. Okla. Tax Comm.*, supra note 6; *Palmer v. Palmer*, Okl., 465 P.2d 156, 160 [1970]; *Lawson v. Lawson*, Okl., 295 P.2d 769, 771 [1956].

cause it is fraught with two vices. Its gross amount is indefinite and it is terminable, inter alia, on wife's vacation of the home.

In the absence of an agreement to the contrary, the trial court cannot award support alimony in an indefinite sum total, though it may provide for payment of the adjudicated gross amount to be made in installments.[8] Before the passage of 12 O.S.Supp. 1965 § 1289, alimony payments were terminable neither on death nor on remarriage.[9] Since that enactment, and following our decision in *Funnell*,[10] death of either spouse or wife's remarriage does, absent an express agreement to the contrary, constitute by operation of the law the permissible contingency upon the happening of which support alimony may be made to terminate.[11] The trial court's decree impermissibly conditioned support alimony obligation when it made its award thereof terminable on wife's vacation of the home.

Since the husband did not appeal, no relief can be granted him by reducing the wife's adjudicated interest in the property.[12] The decree vesting in wife one-half interest must hence be left undisturbed subject, of course, to the required severance of common title to be effected on remand. That portion of the decree which awards wife open-ended support alimony terminable as set forth earlier in this opinion is vacated and cause is remanded with directions to proceed in a manner consistent with the views expressed herein.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, SIMMS, HARGRAVE, JJ., concur.

DOOLIN, J., concurs in part and dissents in part.

8. *Clark v. Clark*, Okl., 460 P.2d 936, 939 [1969]; *Munsey v. Munsey*, Okl., 385 P.2d 902, 905 [1963]; *Finley v. Finley*, 174 Okl. 457, 50 P.2d 643, 645 [1935]; *Oder v. Oder*, 149 Okl. 63, 299 P. 202, 203 [1931].

9. *Wilbanks v. Wilbanks*, Okl., 441 P.2d 967, 969 [1968]; *Bishop v. Bishop*, 194 Okl. 209, 148 P.2d 472, 475 [1944]; *Bowen v. Bowen*, 182 Okl. 114, 76 P.2d 900, 902 [1938].

10. The effect of that decision is that an award of alimony for support does not survive the death of the obligor and cannot be enforced

against the heirs in the absence of an enforceable contract. *Funnell v. Funnell*, Okl., 584 P.2d 1319, 1324 [1978].

11. *Perry v. Perry*, Okl., 551 P.2d 256, 258 [1976]; *Stuart v. Stuart*, Okl., 555 P.2d 611, 616 [1976].

12. A party who does not take an appeal stands in a posture restricted to the defense of the relief granted below. *Woolfolk v. Semrod*, Okl., 351 P.2d 742, 745 [1960].