Rebecca M. BIVINS and Nancy J. Enox, Co–Administrators of the Estate of Rosemary Williams, Deceased, Plaintiffs–Appellants,

v.

STATE of Oklahoma ex rel. OKLAHOMA MEMORIAL HOSPITAL; Sherri Durica, M.D.; Donald Carter, M.D.; Randy Eichner, M.D.; Tim Hepner, M.D.; R. Parham, M.D.; Selby, M.D. (first name unknown); L. Brooks, M.D.; John Doe, M.D. (radiologist); J. Raunikar, M.D.; T. Ingmire, M.D.; R. Elwood, M.D.; Silvester, M.D., Defendants–Appellees.

No. 81319.

Supreme Court of Oklahoma.

Jan. 16, 1996.

Rehearing Denied May 30, 1996.

**458**

Jose Gonzalez, Suzanne Woodrow, Gonzalez & Woodrow, Purcell, and Richard L. Denney, Lydia J. Barrett, Denney & Barrett, Norman, for Appellants.

Inona J. Harness, Haven Tobias, Pierce Couch Hendrickson Baysinger & Green, Oklahoma City, for Appellee Physicians.

Charles L. Waters, General Counsel, Richard W. Freeman, Jr., Assistant General Counsel, Department of Human Services, Oklahoma City, for Appellee Oklahoma Memorial Hospital.

OPALA, Justice.

This public-law controversy presents three questions, the first two of which are dispositive of the appeal: (1) Does the Governmental Tort Claims Act [GTCA][1] shield *faculty* physicians, *student* physicians and medical-school interns—who are either teaching or participating in a graduate medical education program at Oklahoma Memorial Hospital [OMH]—from tort liability to a patient for negligence in providing medical or surgical services? (2) Did the agency's post-notice request for additional information to be supplied about the claim, followed by the claimants' timely submission of supplemental data, *extend* the statutorily-prescribed time for the government's undisturbed consideration of the tort claim—the 90–day bar during which no suit may be filed?[2] and (3) Did the trial court err in giving summary judgment to the defendant physicians and in dismissing the suit against OMH? We answer the *first* question in the negative, both the *second* and *third* in the affirmative, and remand the cause for further proceedings not inconsistent with this opinion.

**I**

**THE ANATOMY OF LITIGATION**

Rosemary Williams [Williams] died on September 23, 1991 from complications of a bone marrow transplant procedure performed at OMH.[3] In the course of a two-step procedure administered to her,[4] the tip of a central venous "Hickman catheter"[5] lacerated Williams' vena cava superior,[6] producing death-dealing hemorrhage.

The medical treatment in question was administered by four *resident* physicians—Drs. Thomas Ingmire, Sherri Durica, Timothy Hepner and John Raunikar—and a resident *intern*, Dr. Robert Parham [collectively called *students* or *student physicians*]. These five individuals were participating in a graduate medical education program at

---

1. 51 O.S.1991 §§ 151 et seq.

2. For the statutory text which creates the time bar, see the provisions of 51 O.S.1991 § 157(A), *infra* note 22.

3. Oklahoma Memorial Hospital (abbreviated as OMH) operated under that name for only thirteen years. *See* 56 O.S.Supp.1980 § 401 (changing the institution's name to Oklahoma Memorial Hospital effective July 1, 1980) and 63 O.S.Supp. 1993 § 3202(1) (reinstating the earlier name of University Hospital effective July 1, 1993).

4. The *first* part of the medical procedure was to harvest malignant bone marrow from Williams' hip. The *second* was surgery to place a central line into her vena cava superior, which is the primary vein that drains the upper portion of the body and empties into the right atrium of the heart. TABER'S CYCLOPEDIC MEDICAL DICTIONARY 1981 (American Jurisprudence Proof of Facts, 3d Series, 16th ed. 1989). Williams was undergoing treatment for cancer *after* four *failed efforts* at chemotherapy.

5. A "Hickman catheter" is a tubular flexible instrument passed through the right atrium for long-term administration of antibiotics or chemotherapeutic agents. *Miller–Keane Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health* 263–264 (5th ed. 1992).

6. For the definition of "vena cava superior", see *supra* note 4.

the University of Oklahoma Health Sciences Center [OUHSC].[7] Drs. George Selby, Robin Elwood, Donald Carter and Randy Eichner [faculty physicians] supervised and instructed the five student physicians regarding Williams' treatment.

The next of kin and co-administrators of Williams' estate [collectively called claimants or plaintiffs] notified OMH of their wrongful death claim by letter that was received *December 9, 1991*. At some point later, claimants were contacted by the Risk Management Division [Division] of the Office of Public Affairs and requested to *supplement* their notice by submitting a "Claimant's Report" form. They completed the form and sent it to the Division on *January 3, 1992*. On September 17, 1992 the claimants commenced this wrongful death action against the five student physicians (Drs. Ingmire, Durica, Hepner, Raunikar, and Parham), the four faculty physicians (Drs. Selby, Elwood, Carter, and Eichner), OMH, and three other defendants.[8]

The trial court's order (filed January 25, 1993) dismissed *with prejudice* the claim against OMH as time-barred.[9] On April 26 of that year the trial court gave summary judgment to the faculty [10] and student [11] physicians by two journal entries. The trial court's summary relief was grounded on GTCA-conferred immunity from tort liability.[12] The trial court concluded that all these defendants, when rendering medical services to Williams, were either engaged in teaching and performing administrative duties or were participating as students in an education program at OUHSC.[13] The plaintiffs, who voluntarily dismissed *below* their suit against the remaining defendants in the case,[14] *timely appeal* for review of (a) their OMH claim's dismissal and of (b) the two summary judg-

---

7. *See* 51 O.S.1991 § 152(5), *infra* note 18.

8. On May 26, 1993 the claimants dismissed without prejudice their suit against *three other defendants*—Drs. *L. Brooks* and *John Doe* (because their true identity and whereabouts could not be discovered) and "Silvester, M.D." (who, once identified as a nurse, was apparently viewed as *not* a necessary party to the cause).

9. The pertinent portions of the dismissal order, filed January 25, 1993, are:
"* * * In its Motion, Defendant OMH seeks dismissal of Plaintiff's action pursuant to 12 Okla.Stat.1991 § 2012(B)(6) on the grounds that Plaintiffs failed to timely commence this action within the time limits prescribed by the Governmental Tort Claims Act, 51 Okla.Stat. 1991 §§ 151–172, and therefore Plaintiffs' action against Defendant OMH is barred by 51 Okla.Stat.1991 § 157(B).
Upon consideration of Defendant OMH's Motion and supporting brief and the arguments of counsel, the Court determines that said Motion should be granted. Accordingly, Plaintiffs' action against Defendant OMH is hereby dismissed with prejudice. * * *"

10. The pertinent portions of the summary judgment's entry for the *faculty* physicians, filed on April 26, 1993, are:
"* * * This Court ... finds that the defendants, George Selby, M.D., Robin Elwood, M.D., Donald Carter, M.D. and Randy Eichner, M.D., faculty attending physicians, at the time of the alleged occurrence, were employees of the State of Oklahoma, acting within the scope of their employment and are, pursuant to the Governmental Tort Claims Act, 51 O.S. § 151, et seq., immune from suit.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment of Defendants ... should be and the same is hereby granted, and that judgment be and is granted as a matter of law in favor of these defendants and against the plaintiffs. * * *"

11. The pertinent portions of the summary judgment's entry for the *student* physicians, filed on April 26, 1993, are:
"* * * This Court ... finds that the defendants, Thomas Ingmire, M.D., Sherri Durica, M.D., Timothy Hepner, M.D., John Raunikar, M.D. and Robert Parham, M.D., resident intern phyicians [sic] and/or resident physicians, at the time of the alleged occurrence, were employees of the State of Oklahoma, acting within the scope of their employment and are, pursuant to the Governmental Tort Claims Act, 51 O.S. § 151, et seq., immune from suit.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment of Defendants ... should be and the same is hereby granted, and that judgment be and is granted as a matter of law in favor of these defendants and against the plaintiffs. * * *"

12. *Supra* note 1.

13. Oklahoma University Health Sciences Center. *See* 51 O.S.1991 § 152(5), *infra* note 18.

14. *See supra* note 8.

ment entries giving victory to the nine (student and faculty) physicians.[15]

## II

## THE GTCA DOES NOT CONFER IMMUNITY UPON A PHYSICIAN FOR NEGLIGENCE OCCURRING IN THE DELIVERY OF HEALTH–CARE SERVICES

■ This court's pronouncement in *Anderson v. Eichner*[16] is dispositive of all the issues pressed by the defendant physicians for the summary rulings' affirmance.[17] *Anderson*, which construes the 1986 and 1989 versions of the GTCA, holds that faculty physicians engaged in teaching or in administrative duties (and resident physicians as well as interns participating in a graduate medical education program) are employees of the state who, while on duty, are deemed acting within the scope of their employment *except when they are practicing medicine.*[18] *In short, the purview of protection from liability created by the GTCA*[19] *does not encompass the practice of the healing art by providing medical or surgical services to patients.*[20]

■ *Anderson* applies with equal force to the statutory scheme in effect when the alleged injuries occurred in this case—September 23, 1991. We know of *no* post–1989 amendment of the GTCA—made effective *be-*

15. The plaintiffs' May 26, 1993 dismissal (without prejudice) of their claim against the remaining defendants (Silvester, Doe and Brooks) marks the final disposition date for *all the claims* and for the *resolution of all the issues* in the case. *The date that dismissal was filed below constitutes the appealable event for this review.* See 12 O.S. 1991 § 1006, *the statute in force at the critical time.* Appealability in actions with multiple parties and claims was then governed by § 1006. Its standards requir*ed* that, before an appeal could be prosecuted, every claim in the action had to be decided, unless there was the trial judge's express authorization for an earlier appeal from some *legally severable* disposition of *less than all* the claims in the case. The plaintiffs filed a petition in error on March 23, 1993, an amended petition on April 30, 1993 and a *second* amended petition on June 14, 1993. Their June 14 *second* amended petition in error—brought here within thirty days of the critical May 26 dismissal's filing—is hence to be treated as *timely* for review of *both* the trial court's January 25, 1993 dismissal of OMH and of the April 26, 1993 summary judgment entries giving victory to the defendant physicians. *See Tinker Inv. & Mortg. v. Midwest City*, Okl., 873 P.2d 1029, 1034 (1994).

16. Okl., 890 P.2d 1329 (1994).

17. The defendant physicians *declined to respond to this court's order* calling upon them to show cause why this appeal from summary judgment entries in their favor should not be treated as controlled by this court's teachings in *Anderson*.

18. The pertinent terms of 51 O.S.1991 § 152(5) (eff. Sept. 1, 1991), which were in force when the claim arose, *provided:*

"5. "Employee" means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis. Employee also includes:
a. all elected or appointed officers, members of governing bodies and other persons designated to act for an agency or political subdivision, but the term does not mean a person or other legal entity while acting in the capacity of an independent contractor or an employee of an independent contractor,

\* \* \* \* \* \*

For the purpose of this act, the following are employees of this state, regardless of the place in this state where duties as employees are performed:
a. *physicians* acting in an administrative capacity,
b. *resident physicians* and *resident interns participating in a graduate medical education program* of the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University,
c. faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University, while engaged in teaching duties.
*Physician faculty members and staff of the University of Oklahoma Health Sciences Center* and the College of Osteopathic Medicine of Oklahoma State University *not acting in an administrative capacity or engaged in teaching duties are not employees or agents of the state.* However, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients." (Emphasis added.)
The 1992, 1993 and 1994 *amendments of § 152 have no effect on this litigation.*

19. 51 O.S.1991 §§ 151 et seq.

20. *Anderson, supra* note 16 at 1340–1341.

*fore* the critical date in 1991—whose terms abrogate *Anderson's* teachings in whole or in part, and none has been urged in the briefs.

Under the authority and rationale of *Anderson,* summary judgment entries for *all* the defendant physicians must hence be reversed. We so hold. This part of today's opinion (Part II) disposes *only* of summary judgment for the faculty and student physicians. The remainder of our pronouncement will address itself to the dismissal of the plaintiffs' claim against OMH.

## III

### A CLAIMANT'S *COMPLETED* SUBMISSION OF THE EARLIER TIMELY CLAIM'S NOTICE, MADE AT THE GOVERNMENT'S REQUEST AND WITHIN A REASONABLE OR STATED TIME, OPERATES TO TRIGGER A NEW STATUTORY 90–DAY BAR FOR CONSIDERATION OF THE CLAIM UNDISTURBED BY SUIT

#### A.

OMH pressed below for its dismissal from the suit on the sole ground that the plaintiffs' malpractice action was time-barred when brought.[21] According to OMH, (a) its request for *more* information had *absolutely no* legal effect upon the length of the 90–day bar prescribed by 51 O.S.1991 § 157(A)[22] for consideration of the claim undisturbed by litigation, (b) the statutory bar of suit, which *started to run when OMH received the claimants' initial notice* (December 9, 1991), expired on *March 9, 1992,* and (c) the terminal date for commencing an action on the claim—180 days *following* March 9—fell on September 8, 1992, several days *before* this suit was brought on September 17, 1992. The plaintiffs, on the other hand, take the position that when the government sought *more* information the time stopped running until the desired data was timely supplied. While OMH wants the 90–day period counted from December 9, 1991 (the day it received the first notice of the tort claim), the plaintiffs insist that January 3, 1992 (the day they supplied the *requested* supplemental information) should be deemed to have started the 90–day interval. According to the plaintiffs, the action (filed *September 17, 1992* ) was timely because if the 90–day time bar is counted from January 3, the 180–day period for filing a claim *did not run out until September 29, 1992.*[23]

■■■ For the reasons to be stated we hold that a claimant—who, while pressing for statutory tort redress against a public agency, responds *within a reasonable or stated time* to (or gives the reason for not complying with) a government's post-notice request for more information about the claim—has in law a legitimate expectation to assume that (1) the agency request is made in good-faith pursuit of *necessary* information and *not* for the purpose of lulling the claimant into a sense of false security, (2) the perceived deficiency to be supplied in response to the request will be treated as submission of a *completed* claim's notice that is to be considered *anew,* and (3) the *new* submission's processing will take the *full* statutory time of 90 days during which the investigation and

**21.** Unlike the defendant physicians, OMH apparently opted below not to use summary process to invoke its GTCA-conferred immunity from tort liability.

**22.** The pertinent provisions of 51 O.S.1991 § 157(A) were:

"A. A claim is *deemed denied* if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the interested parties have reached a settlement before the expiration of that period. A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part. * * * " (Emphasis added.)

The 1994 amendment of § 157 has no effect on this litigation.

**23.** The pertinent provisions of 51 O.S.1991 § 157(B) were:

"B. No action for any cause arising under this act ... shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section. Neither the claimant nor the state or political subdivision may extend the time to commence an action to continuing to attempt settlement of the claim."

The 1994 amendment of § 157 has no effect on this litigation.

evaluation must stand undisturbed by litigation.

**B.**

In every public entity's post-notice request for more information dwells its implied declaration that the earlier notice is to be regarded as deficient (or otherwise unfit for consideration) and is hence, at best, to be treated as only an *inchoate* filing. The *mere* transmission of such request is patently consistent with the notion that the initial notice's content is viewed as legally clouded. A post-notice request for *more complete information* can never logically be equated with the government's *silence, i.e.* with its lack of response which the statute requires to be taken as the claim's denial.[24] Rather, it must be regarded as clearly *incompatible not only* with the notion of *denial*—this so because no rational agency official would press to *know more* about a patently unmeritorious claim—but also with the *initial* submission's continued consideration. No prudent person would believe that risk managers will *continue to process notice* they deem deficient or one they view as having *no* semblance of validity. In short, an agency's post-notice request to be better informed about the claim at hand *negates* the efficacy of the earlier notice and eloquently *signals an end of the initially triggered cycle* of consideration undisturbed by litigation.

▮ The time of the *completed* submission clearly must be viewed as triggering *anew* the 90–day bar. A government-declared deficiency in the first notice and the agency's expressed interest in being better informed about the claim *erase* the time that may have run and invite the transmission of a *completed* (or *consummated*) notice. Once a complete submission has been timely effected, *both the government and the claimant* may reasonably expect to benefit from a *full* 90–day period prescribed by law for investigation and processing to take place undisturbed by forensic combat. In short, the 90–day bar of suit should be regarded as running *from the timely filing of a completed claim's notice* made at the government's request, rather than from the earlier receipt of one found deficient or otherwise perceived as unsuitable for processing.

**C.**

The GTCA's text neither *authorizes*[25] the government to seek nor *prohibits* it from inviting a needed amendment of the claim's notice *beyond the quantum of data* required to be furnished by 51 O.S.1991 § 156.[26] Public policy would generally favor amendments. They provide unquestionable assistance in effective management and processing of claims.[27] A government's post-notice request for additional information raises a strong im-

---

**24.** *See* 51 O.S.1991 § 157(A), *supra* note 22.

**25.** *See in this connection,* N.Y.General Municipal Law § 50–e subd. 6 (1995), which *permits* a *voluntary (unrequested)* amendment of a claim's notice if the error or omission was *not* made in bad faith and the agency did not demonstrate any actual prejudice. *Formanek v. New York City Housing Authority,* 197 A.D.2d 664, 603 N.Y.S.2d 15 (1993); *Nouri v. City of New York,* 90 A.D.2d 745, 456 N.Y.S.2d 1 (1982); *Worrell v. City of New York,* 101 Misc.2d 270, 420 N.Y.S.2d 994 (1979).

**26.** The pertinent terms of 51 O.S.1991 § 156(E) are:

"E. The written notice of claim to the state or a political subdivision shall state the date, time, place and circumstances of the claim, the identity of the state agency or agencies involved, the amount of compensation or other relief demanded, the name, address and telephone number of the claimant, and the name,

address and telephone number of any agent authorized to settle the claim. Failure to state either the date, time, place and circumstances and amount of compensation demanded shall not invalidate the notice unless the claimant declines or refused to furnish such information after demand by the state or political subdivision...."

**27.** *See, e.g., Harrison v. City of Albia,* 144 Iowa 132, 122 N.W. 816, 818 (1909), where the court noted that while the statute governing claims against a city provided for no amendment of the notice, *"it would be unjust to give to the statute so strict a construction as to exclude proof of all facts relating to the nature and cause of the injury, and the defect or negligence complained of, which are not detailed in the notice."* (Emphasis added.) The court concluded by observing that the statute should *"have a liberal construction,* to the end that parties having meritorious claims shall not be cut off by mere technicality as to the form of notice required." (Emphasis supplied.) *Id.* 122 N.W. at 818.

plication that (a) omission of some critical data *prevents a meaningful consideration* of the claim's notice in the form initially transmitted and (b) more time is needed for a minimally adequate investigation and evaluation of the claimant's demand. Legitimate state interest is furthered by a thorough presuit scrutiny of the claim's notice in order to protect the public from unwarranted demands as well as to advance for settlement those claims which have merit and clearly warrant negotiation in advance of litigation.[28] *It is this public-interest element which convinces us today that an agency's post-notice request for additional information must be regarded as impressed with serious legal effect.* The request cannot be cavalierly dismissed as utterly without consequences upon the then-pending 90–day bar-of-suit interval.

 We accordingly hold that when a public entity, *after* receiving timely notice of a claim, calls for more information, the claimant should *cooperate within a reasonable or stated time by supplying the available data requested* or by *giving a satisfactory reason for not complying with the request.* Prompt responses and more complete submissions must be encouraged to prevent premature forensic disputes over claims that, though initially perceived as legally deficient, later unfold themselves as meritorious. During the interval between the request for further information and its timely submission, the then-pending 90–day period—initially triggered by the earlier (perceived as deficient or flawed) notice—must be treated as legally arrested and erased. The time bar will not start running again until the critical informa-

tion is supplied (within some reasonable or stated time) or the claimant *timely* explains satisfactorily why this cannot be done.[29] Since the effect we ascribe to an agency's post-notice request for more data is drawn from the *government's perceived need* for more time to evaluate the completed information about a claim, *today's rule will neither benefit nor apply to any claimant-initiated (voluntary) submission of additional data.*

**D.**

Extant GTCA jurisprudence, *Trent v. Board of County Commissioners,*[30] *Sanchez v. City of Sand Springs,*[31] and *Doe v. Independent School Dist. No. I–89,*[32] has dealt with some aspects of an agency's post-notice request for additional information. Although these cases appear to militate against today's result, we find them *clearly distinguishable* on the point *sub judice* when viewed in light of the record in this case. The *Trent* claimants *utterly failed to respond* to the government's request for further information; in *Sanchez,* the data *was not tendered* until some five months later; and in *Doe, there is no indication* in the opinion's text that the claimant *ever responded* to the request. In contrast to these cases, the claimants in the present case mailed to OMH the additional information on January 3, 1992, *less than one month* from the date of their initial notice of claim.

 In support of the nisi prius dismissal OMH points out that the Attorney General, upon receiving a copy of the initial notice of claim, *informed the claimants* by letter that their "right to sue accrues on March 10,

**28.** *Reirdon v. Wilburton Bd. of Ed.,* Okl., 611 P.2d 239, 240 (1980); *Conway v. Ohio Cas. Ins. Co.,* Okl., 669 P.2d 766, 767 (1983); *Juvenal v. Okeene Public Schools,* Okl., 878 P.2d 1026, 1029 (1994).

**29.** *Dennis v. City of Chickasha,* Okl.App., 898 P.2d 744, 747 (1995) (approved for publication by the Supreme Court June 22, 1995), teaches that an *uncommunicated early* denial of claim (*before* full lapse of the 90–day bar) will not accelerate the time to bring suit. This holding, we think, accords with today's announced rule that a *communicated* post-notice request for additional information, *initiated by the government,* should *stop* and *erase* the bar-of-suit time initially triggered by a timely claim's notice the government perceived to be deficient.

**30.** Okl., 755 P.2d 615, 617 (1988).

**31.** Okl., 789 P.2d 240, 241 (1990). In *Sanchez,* the court held that the city's request for additional information about the motorist's GTCA claim does not toll the 90–day period for denial of the claim. There, the city's insurance carrier requested information about the amount of the claim three days after the claimant's notice. It was *not provided until more than five months later.*

**32.** Okl., 780 P.2d 659, 661 (1988).

1992." The effect to be given the government's post-notice request for more information and to the claimants' timely response presents a pure question of law. No act, omission or statement of either party may alter the legal consequences that attach and are to be declared.[33] The statutory time trigger for the 90–day bar of suit against a public tortfeasor is a law-driven mechanism which is beyond the reach of human tinkering.[34]

Lastly, we must observe that a public agency is not without means to protect itself from an open-ended effect which may flow from an initial notice (found deficient) that is to be supplemented at the agency's request. It may (a) direct that supplemental information must be received on or *before* a stated date and (b) make it clear that if neither submission nor satisfactory explanation is timely made, the deficient claim's notice will stand denied at the end of the initially triggered 90–day period or *at some other date that follows* the deadline for submission of supplemental data.

## IV

## OMH'S SUMMARY JUDGMENT QUEST

OMH urges that if the nisi prius order of dismissal were to be reversed, this court should direct that on remand summary judgment be entered in the hospital's favor because the plaintiffs' claim may not legally be rested *on the negligence of the defendant physicians*.[35] This argument invokes the terms of 51 O.S.1991 § 152(5), which provide that "in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients." [36]

■■■■ An appellate court will not make first-instance determinations of disputed *law or fact* issues. That is the trial court's function *in every case*—whether in law, equity or on appeal from an administrative body.[37] Since the legal effect of § 152(5) had neither been raised nor assessed at nisi prius, we cannot craft an initial decision upon an *untried question* and then direct that it be followed on remand. OMH's immunity-based challenge must first be tendered to and resolved by the trial court.

■■■■ A direction from this court that summary judgment for OMH follow our remand would be procedurally inappropriate for yet another reason. OMH has lodged no counter-petition in error *for relief from the*

33. The letter from the Attorney General acknowledges receipt of the claimants' first notice and informs them that (a) the state has 90 days from receipt of the letter to review the claim; (b) at the end of that period the claimants would have 180 days to bring an action; and (c) their "right to sue accrues on March 10, 1992."

34. An appeal time's trigger—like the time to bring a public-law tort suit—is governed by *statutory time limits*. Once an appealable event has occurred, a trial judge is utterly without authority to extend appeal time by any means or in any manner, direct or oblique. *See, e.g., Manning v. State ex rel. Dept. of Public Safety*, Okl., 876 P.2d 667, 671 (1994); *Grant Square Bank & Trust Co. v. Werner*, Okl., 782 P.2d 109, 111 n. 4 (1989); *Salyer v. National Trailer Convoy, Inc.*, Okl., 727 P.2d 1361, 1362 n. 2 (1986); *Manos v. Leche*, 205 Okl. 213, 236 P.2d 693, 695 (1951); *Watchorn v. General Finance & Sales Co.*, 162 Okl. 203, 19 P.2d 566 (syl. 2) (1933); *Starr v. Woods*, 162 Okl. 242, 19 P.2d 561, 562 (1933); *Sowers v. Archer*, 161 Okl. 148, 17 P.2d 422, 423 (1932); *Philbrock v. Home Drilling Co.*, 117 Okl. 266, 246 P. 457 (syl. 2) (1926); *Bellamy v. Washita Valley Telephone Co.*, 25 Okl. 792, 108 P. 389 (syl. 2) (1910);

*Herring v. Wiggins*, 7 Okl. 312, 54 P. 483 (syl. 1) (1898).

35. It is *unclear* from the pleadings whether the plaintiffs' claim against OMH relies on the hospital's own negligence or solely on its vicarious liability for the substandard health care delivered by its staff physicians.

36. For the pertinent terms of 51 O.S.1991 § 152(5), see *supra* note 18.

37. When necessary findings are absent, the case must be remanded with directions that they be made by the trial court. *Toxic Waste Impact Group, Inc. v. Leavitt*, Okl., 890 P.2d 906, 913 (1995); *Dyke v. St. Francis Hospital*, Okl., 861 P.2d 295, 300 n. 13 (1993); *Matter of Estate of Pope*, Okl., 808 P.2d 640, 642 (1990); *Robert L. Wheeler, Inc. v. Scott*, Okl., 777 P.2d 394, 399 (1989); *Teel v. Teel*, Okl., 766 P.2d 994, 999 n. 19 (1988); *American Ins. Ass'n v. Indus. Com'n*, Okl., 745 P.2d 737, 740 n. 15 (1987); *Sandpiper North Apartments v. Am. Nat. Bank.*, Okl., 680 P.2d 983, 993 (1984); *Matter of Estate of Bartlett*, Okl., 680 P.2d 369, 377 (1984); *Davis v. Gwaltney*, Okl., 291 P.2d 820, 824 (1955).

*claim's dismissal as time-barred.* A successful party below who did not bring an *appeal, counter-* or *cross*-appeal may, as appellee, argue *only those errors* which, if rectified, would *support the correctness* of the trial court's judgment.[38] OMH stands here in a posture *restricted to the defense of the relief it was granted below*[39]—that of dismissal. The result which OMH presses in its brief would substitute (for the trial court dismissal's affirmance) a vastly different form of corrective relief—a summary judgment based on the state hospital's immunity from civil liability for negligence of physicians practising on its staff.

Even if OMH had, by counter-appeal, urged error in the trial court's failure to enter summary judgment, the *record would still be deficient.* It does not show that OMH had *actually* tendered *below* its summary judgment plea *as an alternative* to the dismissal quest (based on the statutory time bar) and that the former relief (by summary judgment based on immunity) was denied in the nisi prius exercise of judicial preference for the claim's dismissal as time-barred.

In sum, OMH is *not* asking that we affirm a favorable nisi prius disposition on some *theory different* from that invoked below.[40] Its plea is rather for a *different judgment* from that entered below—one that is to be directed *sans* support in the record *or* in the trial court's analysis of the case based on the materials tendered to it for decision.[41]

## V

## SUMMARY

The purview of protection from liability affordable by the GTCA does not encompass the practice of the healing art by providing medical or surgical services to patients. The claim against the defendant physicians arose *from their treatment of Williams* during a bone marrow transplant procedure.

The procedures of the GTCA are not applicable to the claim against the defendant physicians because the plaintiffs' action was intended to redress a private tort—not to cast any obligation on the State. Plaintiffs look solely to the individual civil liability of the defendant physicians. The trial court clearly erred in giving summary relief rested on the physicians' perceived GTCA-conferred immunity.

When a public entity requests more information *after* receiving initial notice of a claim, the claimant should cooperate by responding within a reasonable or stated time or by giving a satisfactory reason for not complying with the request. Upon the *complete submission of notice*, the claim must be given a *fresh* consideration. During the period between the agency's post-notice request and the data's *timely* submission, the 90–day bar, triggered by the *initial notice* (perceived as deficient or flawed), must be treat-

---

**38.** *Price v. Reed*, Okl., 725 P.2d 1254, 1261 n. 29 (1986); *Oklahoma Water Resources Bd. v. Texas County*, Okl., 711 P.2d 38, 43–44 (1984); *Cleary Petroleum Corp. v. Harrison*, Okl., 621 P.2d 528, 534 (1980); *Nilsen v. Tenneco Oil Co.*, Okl., 614 P.2d 36, 39 (1980); *Matter of Estate of Bradshaw*, Okl., 606 P.2d 578, 580 (1980); *May v. May*, Okl., 596 P.2d 536, 540 (1979); *Woolfolk v. Semrod*, Okl., 351 P.2d 742, 745 (1960).

**39.** *May, supra* note 38 at 540 n. 12; *Woolfolk, supra* note 38 at 745.

**40.** This court will affirm a correct judgment on any applicable theory. *Matter of Estate of Maheras*, Okl., 897 P.2d 268, 272 n. 5 (1995); *Wright v. Grove Sun Newspaper Co., Inc.*, Okl., 873 P.2d 983, 993 (1994); *Messenger v. Messenger*, Okl., 827 P.2d 865, 874 (1992); *Willis v. Nowata Land and Cattle Co.*, Okl., 789 P.2d 1282, 1286–87 (1990); *Davidson v. Gregory*, Okl., 780 P.2d 679,

685 n. 23 (1989); *Benham v. Keller*, Okl., 673 P.2d 152, 154 (1983); *Utica Nat'l Bank and Trust v. Assoc. Prod.*, Okl., 622 P.2d 1061, 1066 (1981); *Thompson v. Inman*, Okl., 482 P.2d 927, 937 (1971); *Holloway v. Ward*, 84 Okl. 247, 203 P. 217, 219 (1922).

**41.** Summary judgment can be based only on the record that was before the trial court at the time the decision was made, and not on materials later sought to be considered as an afterthought. *Allen v. Board of Trustees*, Okl., 769 P.2d 1302, 1305 (1988); *In re Estate of Whitlock*, Okl., 754 P.2d 862, 863 (1988); *Frey v. Independence Fire and Cas. Co.*, Okl., 698 P.2d 17, 20 (1985); *RST Service Manufacturing, Inc. v. Musselwhite*, Okl., 628 P.2d 366, 368 (1981); *Wabaunsee v. Harris*, Okl., 610 P.2d 782, 784 (1980); *Culpepper v. Lloyd*, Okl., 583 P.2d 500, 502 (1978); *Weeks v. Wedgewood Village Inc.*, Okl., 554 P.2d 780, 784 (1976); *Northrip v. Montgomery Ward & Co.*, Okl., 529 P.2d 489, 494 (1974).

ed as erased and arrested. It will not start running again until the materials sought are *timely* supplied or a satisfactory explanation is timely made for not complying with the request. Because we hold that the claimants' *timely* provision of the requested postnotice information on January 3, 1992 marked *the new beginning* for the 90–day bar-of-suit period, the September 17, 1992 filing of this action was timely.

Appellate courts do not make initial determinations of disputed *law or fact* issues. One who did not timely appeal, counter-, or cross-appeal may not seek corrective relief from a nisi prius judgment or final order. A party who brings *no* petition in error stands on appeal in a posture restricted to the defense of the relief granted below, but nothing will prevent that party from *arguing in support of the nisi prius decision's correctness.*

The trial court's summary judgment entries and its dismissal order are reversed; the cause is remanded for further proceedings not inconsistent with this pronouncement.

WILSON, C.J., KAUGER, V.C.J., and LAVENDER and SUMMERS, JJ., concur.

SIMMS and HARGRAVE, JJ., concur in part and dissent in part.

HODGES and WATT, JJ., dissent.

WATT, Justice, with whom HODGES, Justice, joins, dissenting.

I dissent to Part II of today's opinion for the reasons set out in my dissent in *Anderson v. Eichner,* 890 P.2d 1329 (Okla. 1994).

I dissent to Part III of the opinion because it is contrary to extant GTCA jurisprudence, *Trent v. Board of County Commissioners,* 755 P.2d 615 (Okla.1988), and its progeny.