2010 OK CIV APP 30

**Paula CROCKETT, Plaintiff/Appellant,**

v.

**CENTRAL OKLAHOMA TRANSPORTATION & PARKING AUTHORITY, Defendant/Appellee.**

**No. 106966.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Jan. 5, 2010.

Certiorari Denied March 22, 2010.

---

Luke Abel, Lynn B. Mares, Abel Law Firm, Oklahoma City, OK, for Plaintiff/Appellant.

Peter A. Erdoes, Peck, Erdoes & Wenzel, PA, Oklahoma City, OK, for Defendant/Appellee.

JOHN F. FISCHER, Judge:

¶ 1 Paula Crockett appeals the decision of the district court granting Central Oklahoma Transportation and Parking Authority (COTPA)'s motion to dismiss her negligence suit on statute of limitation grounds. Based on our review of the record on appeal and applicable law, we reverse and remand for further proceedings.

## BACKGROUND

¶ 2 This case arose from a March 2, 2007, incident involving a Metro Transit bus operated by COTPA. Crockett alleges that while she was riding on the bus, it came to a sudden stop, and she was thrown from her seat and injured. Immediately after the incident, Crockett noticed that the bus driver was filling out an incident report and she asked the driver for a copy. The driver told Crockett to request a copy from Metro Transit. Crockett called Metro Transit and was told the report could not be located. Metro Transit did, however, mail Crockett a form entitled "Claim Voucher–Property Damage or Personal Injury." She was asked to complete and return this Claim Voucher. The Claim Voucher requested information concerning the incident, details of any alleged property loss, and whether Crockett had insurance coverage for any damages she suffered. Crockett completed the Claim Voucher, attached a hand-written narrative of the incident, signed the Claim Voucher and had it notarized on March 12, 2007. She returned it to "COTPA–Claims" at COTPA's business address. COTPA states in its pleadings that it received the Claim Voucher on either March 13 or March 15. COTPA forwarded this form to its insurer, American National Insurance Company (Insurer) some time before March 26, 2007. After receipt of the Claim Voucher, COTPA did not respond to or further communicate with Crockett.

¶ 3 On March 15, 2007, Crockett hired counsel. Counsel wrote to COTPA the same day informing it of his representation of Crockett. On March 26, Insurer responded to Crockett's counsel, acknowledging his representation. The letter further stated that "when your notice of tort claim is complete, [Insurer needs] additional information to evaluate the injury claim." The requested information included a medical authorization, a wage authorization, and a recorded statement from Crockett. The letter concluded with the following:

. our investigation, request for information, .or review of materials provided will not extend the time limitations set forth by the GTCA or by any other law. We are not waiving any of the statutory limitations, requirements or exemptions provided by Tit. 51 Chapter 5.

On May 9, 2007, Insurer sent a second letter to counsel that differed in two respects. The line previously stating that "*when* your notice of tort claim is complete" now stated "*while* your notice of tort claim is complete." Further, the second letter stated that "we received a notice of tort claim from your client on March 23, 2007." A copy of the Claim Voucher was attached to this letter.[1]

¶ 4 On January 14, 2008, Insurer wrote to Crockett's counsel stating that notice of Crockett's claim had been received on March 13, 2007, and, therefore, the Governmental Tort Claims Act (GTCA) statute of limitations on the claim had expired on December 8, 2007. On January 25, 2008, Crockett's counsel wrote to Insurer stating that (1) Crockett had not given any notice of claim pursuant to the GTCA, and had until March 2, 2008, to do so; and (2) Insurer's March 26, 2007 letter stated that the claim was not complete, and Insurer's requests for information showed that the claim was not complete, tolling the statute of limitations.

¶ 5 On February 7, 2008, Crockett's counsel wrote to Insurer inclosing various medical records and bills, and stating that Insurer's adjuster had requested the information in a prior phone conversation because "they may be able to get the case resolved."[2] The

---

1. The record contains several minor inconsistences. COTPA variously describes the date it received the Claim Voucher as either February 13 or February 15. The Claim Voucher is stamped received by Insurer on March 26, 2007, but Insurer represented to Crockett in the May 9 letter that it was received on March 23, 2007.

2. The date of this conversation is not known. However, counsel's February 7, 2008 letter states

letter requested that Insurer notify counsel "if this does not accurately state our conversation." Insurer did not respond. On February 8, 2008, Crockett filed suit against COTPA. Her petition stated that "a claim pursuant to the [GTCA] has been and is being presented to Defendant. . . ." However, Crockett did not file any notice of claim between her January 25 letter and February 8.

¶ 6 On June 9, 2008, the district court dismissed Crockett's first petition, without prejudice, for failure to obtain service. Crockett timely refilled her petition and appeals the order dismissing her second petition with prejudice on statute of limitation grounds.

### STANDARD OF REVIEW

■■■ ¶ 7 COTPA's motion to dismiss and Crockett's reply included evidentiary materials. This Court has held that a trial court may review evidentiary material attached to a motion to dismiss without converting the motion to one for summary judgment if the motion challenges the court's jurisdiction. *Visteon Corp. v. Yazel,* 2004 OK CIV APP 52, ¶ 21, 91 P.3d 690, 694. COTPA's motion to dismiss argued that the applicable limitation periods bar Crockett's claim. "Compliance with the written notice of claim and denial of claim provisions in §§ 156 and 157 are prerequisites to the state's consent to be sued and to the exercise of judicial power to remedy the alleged tortious wrong by the government." *Shanbour v. Hollingsworth,* 1996 OK 67, ¶ 7, 918 P.2d 73, 75. "Judicial power is invoked by the timely filing of the governmental tort claims action pursuant to § 157, and expiration of the 180–day time period in § 157(B) operates to bar judicial enforcement of the claim against the government to which the Legislature waived sovereign immunity." *Id.* Consequently, we review COTPA's mo-

tion to dismiss de novo to determine whether the petition is legally sufficient. *Indiana Nat'l Bank v. Dep't of Human Servs.,* 1994 OK 98, ¶ 2, 880 P.2d 371, 375.

### ANALYSIS

¶ 8 COTPA is a public trust subject to the GTCA. 51 O.S. 2001 & Supp.2008 §§ 151–200. COTPA contends that Crockett's claim was either barred pursuant to GTCA section 156(B), because Crockett did not provide notice of the claim within one year of the injury, or barred pursuant to GTCA section 157(B) because Crockett did not file suit within 180 days of the denial of her claim.

### I. The Section 156 Limitation Period

■■ ¶ 9 In response to COTPA's motion to dismiss her suit, Crockett argued that she did not intend to file a notice of claim when she returned the COTPA Claim Voucher, and that COTPA could not initiate the GTCA notice process on her behalf.[3] In its reply, COTPA argued that if the Claim Voucher did not constitute notice then no notice had been filed, the time for filing her notice of claim had passed and Crockett's suit was barred by section 156(B) for failure to give notice within one year of the incident. Sections 156(D) and (E) state the minimum requirements for GTCA notice:

(D) A claim against a political subdivision shall be in writing and filed with the office of the clerk of the governing body.

(E) The written notice of claim to the state or a political subdivision shall state the date, time, place and circumstances of the claim, the identity of the state agency or agencies involved, the amount of compensation or other relief demanded, the name, address and telephone number of the claimant, and the name, address and tele-

that the conversation occurred sometime after his January 25, 2008, letter to Insurer.

3. Although Crockett continues to argue that the returned Claim Voucher did not constitute GTCA notice, that position leads to the conclusion that no notice was ever filed and, therefore, her claim is barred for failure to file notice within one year as required by section 156. Crockett is correct in one respect; her subsequent communications

with Insurer did not constitute GTCA notice, per this Court's recent decision in *Smith v. White Oak Sch. Dist. ex rel. State Bd. of Educ. and Farmers Ins. Co.,* No. 105,108, slip op. (Okla.Civ. App.2008). Nonetheless, for the reasons discussed in this Opinion, the Claim Voucher submitted directly to COTPA served as the required GTCA notice and preserved Crockett's right to file suit as permitted by applicable law.

phone number of any agent authorized to settle the claim. Failure to state either the date, time, place and circumstances and amount of compensation demanded shall not invalidate the notice unless the claimant declines or refuses to furnish such information after demand by the state or political subdivision.

Although the Claim Voucher submitted by Crockett did not contain all of the information identified in this statute, section 156(E) is clear; the lack of certain required information does not "invalidate the notice." [4] The Claim Voucher identified Crockett and the incident during which she claimed to have been injured. It was in writing and filed with COTPA Claims as directed by COTPA in the instructions accompanying the voucher. Although it cannot be determined from this record who was the "clerk" of COTPA for purposes of filing section 156 notice, COTPA does not argue that the Claim Voucher was not filed with the proper person. [5]

¶ 10 Crockett's argument that COTPA impermissibly "controlled" the filing of her GTCA notice is unpersuasive. Despite the fact that section 156(B) permits a claimant one year within which to file a claim, a claimant may choose to file sooner. Although the Claim Voucher and accompanying information sent by COTPA requested information that constituted GTCA notice if returned, COTPA neither set a time limit on the return of the completed Claim Voucher, nor attempted to limit Crockett to only that method of filing her notice of claim. Crockett cites no authority supporting the conclusion that the Claim Voucher was not GTCA notice merely because COTPA sent her the blank form. Crockett voluntarily chose to complete the Claim Voucher and return it on March 12, 2007. The returned Claim Voucher satisfied the requirements of section 156 as of no later than March 23, 2007, the latest date on which agents for COTPA represented that the Claim Voucher had been received. [6] The Claims Voucher was filed within one year of the March 2, 2007, incident, and consequently Crockett gave notice of her claim within one year as required by Section 156.

## II. The Section 157 Limitation Periods

■ ¶ 11 COTPA also argues that Crockett's claim is barred by section 157. That section contains two critical periods. First, a 90–day "period for approval" begins on the filing of a notice of claim. During this time, the governmental entity evaluates the claim and may approve or deny it. If this 90–day period expires without response from the governmental entity, the claim is deemed denied and the claimant must file suit within the following 180 days. The record shows that neither party was particularly precise in communicating its intentions or understanding regarding these time periods. Nonetheless, as previously stated, Crockett's Claim Voucher served as the notice required by section 156 and was filed no later than March 23, 2007. In the absence of any further action, Crockett's claim would consequently have been deemed denied on June 21, 2007. However, on March 26, Insurer requested additional information regarding Crockett's claim.

### A. The March 26 Letter

■ ¶ 12 It is not disputed that Crockett's initial claim lacked all of the information

---

**4.** COTPA does not argue that Crockett's delay in submitting the requested information invalidated her GTCA notice.

**5.** Therefore, we are not concerned with the issue this court decided in *Smith v. White Oak Sch. Dist. ex rel. State Bd. of Educ. and Farmers Ins. Co.*, No. 105,108, slip op. (Okla.Civ.App.2008). *White Oak* held that the 1995 amendment to section 156 required strict compliance with the requirement that notice of governmental tort claims be filed "in writing and with the office of the clerk of the governing body." *White Oak* examined the sufficiency of a filing with the claims adjuster for a governmental entity's insur-

er and, citing *Minie v. Hudson*, 1997 OK 26, 934 P.2d 1082, held that such "substantial compliance" with the filing requirement was no longer an effective substitute for the statutory process. However, in this case, all communications between Crockett and COTPA's Insurer occurred after the Claims Voucher was filed.

**6.** *Cf., Carswell v. Oklahoma State Univ.*, 1999 OK 102, 995 P.2d 1118 (holding that the state was estopped to argue that the 90–day notice period expired on a date prior to the expiration date it cited to the claimant).

required by section 156(E). It contained only a limited description of her injuries, and did not state the amount of compensation demanded. Further, Insurer stated in its March 26, 2007, letter that it did not consider Crockett's claim to be complete and required additional information to evaluate the claim. A request by a governmental entity that the claimant supply additional information necessary to evaluate the claim suspends the 90–day period of approval and eliminates any time that has run from the filing of the notice. *Bivins v. State ex rel. Oklahoma Mem'l Hosp.* 1996 OK 5, ¶ 11, 917 P.2d 456, 462. *Bivins* states:

> A government-declared deficiency in the first notice and the agency's expressed interest in being better informed about the claim erase the time that may have run and invite the transmission of a completed (or consummated) notice....

> During the interval between the request for further information and its timely submission, the then-pending 90–day period—initially triggered by the earlier (perceived as deficient or flawed) notice—must be treated as legally arrested and erased.

*Id.* at ¶¶ 12, 14, 917 P.2d at 462, 463. Clearly, Insurer's March 26 letter served this purpose and suspended the initiation of the 90–day approval period provided for in section 157(A).

¶ 13 *Bivins* also noted that this construction could lead to unreasonable delays in claim processing because a claimant might try to indefinitely prolong the 90–day approval period by withholding information after a request. To counter this undesirable effect, *Bivins* stated that:

> a public agency is not without means to protect itself from an open-ended effect which may flow from an initial notice

(found deficient) that is to be supplemented at the agency's request. It may (a) direct that supplemental information must be received on or before a stated date and (b) make it clear that if neither submission nor satisfactory explanation is timely made, the deficient claim's notice will stand denied at the end of the initially triggered 90–day period or at some other date that follows the deadline for submission of supplemental data.

*Id.* at ¶ 17, 917 P.2d at 464. The *Bivins* procedure allows COTPA, after declaring that it required further information to evaluate the claim, to condition the reinstatement of the 90–day period on a reasonably timely response by the claimant. Insurer's March 26, 2007, letter asked Crockett to "respond to these requests within the next fourteen days to expedite the handling of your client's claim." However, the letter did not state that failure to submit the requested information would result in a return to the initially triggered 90–day period or that the 90–day period would automatically begin at the end of the fourteenth day. Consequently, the March 26 letter suspended the initiation of the 90–day approval period without imposing a date on which it would begin to run.[7]

### B. The May 9 Letter

■ ¶ 14 Regardless of the confusion generated by the parties' correspondence, it is clear that by May 9, 2007, Insurer considered Crockett's Claim Voucher sufficient for purposes of evaluating her claim. Insurer's May 9 letter so informed Crockett's counsel. Consequently, we hold that Crockett's submission of the Claim Voucher satisfied the GTCA notice requirements, that Insurer's March 26 letter requesting additional information to evaluate the claim suspended the

---

7. COTPA relies on *Floyd v. Quinton Pub. Schs.*, 438 F.Supp.2d 1318 (E.D.Okla.2006), to argue that the "no extension" language attached to its letters prevents any tolling or resetting of the original 90–day limitation period, irrespective of whether the claim was incomplete, or whether COTPA requested further information. COTPA cites no Oklahoma decision adopting the rationale of *Floyd*. Nor do we find the federal court's interpretation of *Bivins*, and hence the rationale of *Floyd*, persuasive. *Bivins* clearly holds that, "[d]uring the interval between the request for further information and its timely submission, the then-pending 90–day period—initially triggered by the earlier (perceived as deficient or flawed) notice—*must be treated as legally arrested and erased.*" *Bivins*, 1996 OK 5 at ¶ 14, 917 P.2d at 463 (emphasis added). Although *Bivins* allows a government entity to condition the start of the 90–day period on timely compliance with its information request, it does not permit the entity to request additional information and at the same time declare that the 90–day period continues to run during the interim.

90–day approval period and erased the time between March 23 and May 9. Consequently, the 90–day approval period provided for in section 157(A) began to run on May 9, 2007.

¶ 15 The next issue to be resolved is whether the May 9 letter's repetition of the previous request for information was sufficient to suspend the initiation of the 90–day approval period again. Crockett argues that although the May 9 letter declared the claim complete, the letter's repetition of the March 26 request for medical bills and a recorded statement implied that further information was needed to evaluate the claim, and the claim therefore remained incomplete. Crockett also argues that her eight-month delay in sending the requested information was not unreasonable, relying on language in *Bivins* that a claimant may "respond within a reasonable or stated time to ... a government's post-notice request for more information about the claim." *Bivins* at ¶ 10, 917 P.2d at 461. We find Crockett's argument unpersuasive.

¶ 16 First, Crockett's argument is inconsistent with *Bivins* and section 157. To accept Crockett's argument would be to find that "a public agency is ... without means to protect itself from an open-ended effect which may flow from an initial notice (found deficient) that is to be supplemented at the agency's request." *Id.* at ¶ 17, 917 P.2d at 464. Although we find that Insurer's March 26 request for additional information within fourteen days was insufficient to automatically trigger the 90–day approval period at the end of that time, the May 9 letter clearly states that Insurer considered Crockett's claim to be complete and that the requested information was therefore not necessary to evaluate her claim. It is the governmental agency that may, pursuant to *Bivins*, determine when a claim is capable of evaluation. Further, Crockett's eight-month delay in providing the requested information without any explanation of the reason for that delay was not responsive to Insurer's March 26 or May 9 requests for the information within fourteen days. Again, once a request for

information to evaluate the claim has been filed, *Bivins* does not contemplate that the claimant then controls when the 90–day period begins to run.

¶ 17 Second, a request for information does not always erase the 90–day time period. *See Trent By and Through Trent v. Bd. of County Comm'rs of Johnston County*, 1988 OK 15, 755 P.2d 615 (holding that the 90–day evaluation period begins to run from the time notice of a claim has been filed even though the public agency requests additional information after that date); *Doe v. Indep. School Dist. No. I–89*, 1988 OK 115, ¶ 10, 780 P.2d 659, 661. ("We find no merit in appellant's argument that appellees' request for additional information somehow extended the statute of limitations."). After a claim has been evaluated, the GTCA contemplates that communications between the parties may occur in an attempt to resolve the matter without litigation. That communication will invariably involve the exchange of additional information, and *Bivins* does not stand for the proposition that each request restarts the 90–day clock. After Insurer clearly informed Crockett in its May 9 letter that her claim was deemed complete, Insurer's request for additional information on and after that date did not again suspend the initiation of the 90–day period.

### III. Dismissal Pursuant to Section 157(B)

¶ 18 Because COTPA did not formally deny Crockett's claim, it was deemed denied on August 7, 2007, 90 days after the May 9 notice that the claim was complete. Consequently, Crockett was required to file suit no more than 180 days later, or by February 4, 2008.[8] However, Crockett did not file her suit until February 8, 2008. Consequently, her suit was barred unless either the 90 or 180–day period was enlarged. Section 157 "authorizes an enlargement of the 90 day period for denial of a claim and it authorizes an enlargement of the 180 day period for commencement of an action. The sole requirement for an enlargement of time is that the parties agreed to such an enlargement in

---

8. Although February 4, 2008 is 181 days after the 90–day period expired, February 3 was a Sunday.

writing." *Vaughan v. City of Broken Arrow*, 1999 OK 47, ¶ 9, 981 P.2d 316, 319–20.

¶ 19 Several events occurred after May 9, 2007, relevant to this issue. On June 19, 2007, Crockett sent Insurer an affidavit from a witness to the incident. Insurer did not request this information. An unsolicited delivery of information does not restart the 90–day period.[9] On January 14, 2008, Insurer wrote to Crockett's counsel stating that it believed the statute of limitations on the claim had expired as of December 8, 2007.[10] Crockett's counsel responded on January 25, stating that (1) Crockett had not yet given notice of her GTCA claim, (2) that she had until March 2, 2008, to do so, and (3) Insurer's March 26 letter requesting additional information suspended the beginning of the 90–day evaluation period. Before filing suit on February 8, 2008, Crockett's counsel again wrote to Insurer. This letter is dated February 7 and states that Crockett's counsel spoke with Insurer's adjuster "between January 27 and February 8, 2008." In that conversation, the adjuster purportedly requested the medical records and bills requested in Insurer's March 26, 2007, letter and stated that "we may be able to get this case resolved." In the February 7 letter, counsel requested that Insurer respond if the description of this conversation was incorrect.[11]

¶ 20 Although section 157 requires a waiver of the limitations period to be in writing, *Cortright v. City of Oklahoma City*, 1997 OK 158, ¶ 8, 951 P.2d 93, 97, notes that:

under extant jurisprudence, evidence of the acts of the parties as a whole will be considered to determine the existence of an agreement and a writing signed by only one party can be binding if there was a meeting of the minds on essential elements on unequivocal terms and one party acted thereon in good faith. Further, evidence of a writing signed by one party and acceptance of the terms of the writing by the other is sufficient to bring the action within the statute of limitations for written contracts. These general rules are not inconsistent with the words of § 157(A)— agreed to in writing by the claimant and the state or political subdivision. . . .

Crockett's counsel described the conversation with Insurer's adjuster in his February 7 letter and invited Insurer to respond if his description did not reflect the parties' conversation. COTPA neither denied the described version of the conversation nor responded to the letter. These facts may be sufficient to satisfy the requirements of *Cortright*. If the conversation described by Crockett's counsel took place before February 4, 2008, it creates an issue of fact as to whether Insurer agreed to toll the 180–day limitation period. However, from this record we cannot determine when the conversation took place, and we therefore cannot determine whether the section 157 limitation period was tolled prior to February 4, 2008.

¶ 21 Further, based on the facts asserted by her counsel, Crockett may be entitled to a defense to COTPA's section 157 limitation period argument based on equitable estoppel.

A fact question as to whether a defendant is estopped from interposing the defense of a time bar is generally raised by a plaintiff's allegations that the defendant had made (a) some assurance of settlement negotiations reasonably calculated to lull the plaintiff into a sense of security and delay action beyond the statutory period, or (b) an express and repeated admission of liability in conjunction with promises of payment, settlement or performance, or (c) any false, fraudulent or misleading conduct or some affirmative act of concealment to

---

9. "Since the effect we ascribe to an agency's post-notice request for more data is drawn from the government's perceived need for more time to evaluate the completed information about a claim, today's rule will neither benefit nor apply to any claimant-initiated (voluntary) submission of additional data." *Bivins*, 1996 OK 5 at ¶ 11, 917 P.2d at 463.

10. Insurer's representation did not account for the effect of its March 26, 2007, letter previously discussed.

11. While there is an inconsistency between Crockett's counsel's affidavit, which states that he spoke with Insurer's adjuster "between January 25 and February 8" and the letter confirming the conversation, which is dated February 7, this does not affect our current analysis.

exclude suspicion and preclude inquiry, which induces one to refrain from timely bringing an action. . . .

*Jarvis v. City of Stillwater,* 1987 OK 5, ¶ 4, 732 P.2d 470, 472–73. Likewise, the facts necessary to determine the availability of this defense to Crockett cannot be determined from this record.

¶ 22 Although it cannot be determined from this record whether COTPA agreed to toll the 180–day limitation period or is estopped from asserting that the 180–period had run, dismissal of Crockett's petition on the basis that it was not timely filed is inappropriate if either is true. Because factual determinations are necessary to resolve this issue, this case must be remanded to the district court. *Bivins,* 1996 OK 5 at ¶ 19, 917 P.2d at 464.

## CONCLUSION

¶ 23 The 90–day period of review prescribed by 51 O.S. Supp. 2006 § 156, began to run in this case on May 9, 2007. Therefore, unless tolled by a written agreement of the parties or the conduct of COTPA or its agent, Crockett was required to file suit by February 4, 2008. Because unresolved issues remain regarding the existence of either circumstance, this case must be remanded to the district court for further proceedings.

¶ 24 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

GABBARD, P.J., and RAPP, J., concur.